SIDWAY v. MISSOURI LAND & LIVE STOCK CO., Limited, et al.

(Circuit Court, S. D. Missouri, W. D.   May 28, 1902.)

1. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—JOINDER OF UNNECESSARY PARTIES.

The local manager in a state for a foreign corporation is not a necessary party to a suit by a stockholder for the appointment of a receiver and to wind up the affairs of the corporation, upon allegations that he is aiding and abetting the governing board of directors in carrying out a policy of administration which is ruinous to the corporation and detrimental to the stockholders by obeying the orders of such board in all respects; and his joinder as a defendant in such suit, brought in the state of which both he and the complainant are citizens, will not prevent the removal of the cause into a federal court, since such allegations state no ground which would warrant a decree against him personally.

2. SAME.

The presence on the record of a merely nominal defendant, who is a citizen of the state of venue, will not defeat the right of removal by a nonresident defendant, and the rule that plaintiff's pleading is to be construed most strongly against him should be strictly applied in determining whether such local defendant is a necessary party, where there is reason to believe, from facts appearing in the record, that his joinder was for the purpose of defeating a removal.

3. CORPORATIONS—SUIT BY STOCKHOLDER—MISSOURI STATUTE.

Rev. St. Mo. 1899, § 1338, gives the courts of the state jurisdiction over the directors, managers, trustees, and other officers of domestic corporations at suit of a stockholder: First, to compel such directors, etc., "to account for their official conduct in the management and disposition of the funds, property and business committed to their charge"; second, to order, decree, and compel payment by them to the corporation and its creditors of all sums of money and of the value of all property which they may have acquired to themselves, or transferred to others, or which may have been lost or wasted by any violation of their duties or abuse of their powers. By the amendatory act of March 13, 1901 (Laws 1901, p. 89), the first clause of such section was made applicable to alien corporations having property in the state at suit of a local stockholder, but the second clause was omitted from such provision, and instead it was provided that the court might restrain any alienation of property, and appoint a receiver "to take charge of the business, property, or effects of such corporation, and to collect, sue for, and recover the debts and demands that may be owing * * * to such corporation." Held, that the amendatory act did not enable a local stockholder in a foreign corporation to bring suit directly against the local manager to recover from him for an alleged conversion or misappropriation of corporate assets; the specific remedy provided, through suit by the receiver, being exclusive.

¶ 1. Diverse citizenship as ground of federal jurisdiction, see note to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

**4.** PARTIES—SUIT AGAINST CORPORATION FOR INJUNCTION.

An injunction against a corporation restraining it from disposing of its property is binding upon its officers and agents, and they are not necessary parties to a bill for such relief.

**5.** EQUITY PLEADING—AMENDMENT OF BILL.

An affidavit filed in the course of a hearing on an application for the appointment of a receiver for the property of a corporation cannot be considered as an amended or supplemental bill, where leave was not asked or granted to file an amended pleading; nor can the statements made in such affidavit render one a necessary party to the suit who was not such under the allegations of the bill.

**6.** REMOVAL OF CAUSES—TIME FOR FILING PETITION—WAIVER OF RIGHT.

The fact that a nonresident defendant corporation appeared and resisted an application for the appointment of a receiver for its property pendente lite, made to the judge of a state court in vacation, as permitted by statute, does not affect its right to remove the cause where petition and bond therefor are filed on or before the time it is required by the laws of the state or rule of the state court to answer or plead to the complaint; nor is the right of removal barred by the taking of an appeal from an order appointing such receiver, though it would seem that the removal operates to vacate such appeal, since under the statute the controversy in its entirety passes into the jurisdiction of the federal court.

On Motion to Remand to State Court.

Lathrop, Morrow, Fox & Moore and W. Cloud, for complainant.
Frank Hagerman and George Hubbert, for defendants.

PHILIPS, District Judge. The motion to remand raises two principal questions: First, that the defendant J. M. Purdy is a citizen of the state of Missouri, and the cause of action is joint as to the alien corporation, on whose application the cause was removed from the state court into this court, and the resident defendant, J. M. Purdy; and, second, because the alien defendant corporation had, prior to the application for a removal from the state circuit court, so far appeared to the merits of the case as to have waived and lost the right to remove. To a proper understanding and solution of the first objection a brief reference to the history of this controversy and the state statute on which this suit is based is important. In 1899 this complainant instituted a like suit against the defendant corporation in the state court, which was removed into this court by the defendant. A demurrer to the bill was sustained by this court. See 101 Fed. 481. Thereupon the complainant filed an amended bill, setting up substantially the same material facts, with some additional averments, but in all essential particulars containing the same facts alleged in the present bill respecting the defendant corporation. The defendant again demurred, and that demurrer was heard by Judge Adams, of the Eastern district of this state, which demurrer was sustained. The principal ground of the court's rulings was that, the defendant being an alien corporation of Scotland, Great Britain, neither at common law nor under the then existing statute of this state would an action lie in favor of an individual shareholder of the corporation, in the courts of this country for the appointment

¶ 4. See Corporations, vol. 12, Cent. Dig. § 1965; Injunction, vol. 27, Cent. Dig. § 215.

of a receiver, looking to the winding up of its corporate business and the distribution of its assets as if it were a domestic corporation, thereby working a practical dissolution of this alien corporation; such jurisdiction inhering alone in the methods of procedure in the foreign state where the corporation was chartered, and where its governing board of directors are domiciled. Acquiescing in the correctness of this ruling, the complainant was instrumental in procuring the passage, by the state legislature, of an amendment to the state statute (see Laws Mo. 1901, p. 89), the purpose of which was to enable a resident shareholder of this country to obtain a footing in the state courts to have a receiver appointed for all the property of the corporation situate in the state of Missouri, where its principal business was being conducted, and to wind up the corporation, administer and distribute its assets among the shareholders. The evident purpose of which was to obviate the ruling of this court in said first suits. The whole gravamen of all the bills of complaint is the alleged derelictions, mismanagement, and maladministration of the nonresident board of directors, acting under the policy and dictation of the great majority of the alien stockholders. In the present bill of complaint, as in its antecedents, in order to lay a foundation for the footing of a single stockholder to go around the board of directors and ask the interposition of a court of equity, the complaint sets out the letter of grievance addressed to the stockholders in Scotland, demanding, when they met at the regular annual period for the election of directors, that they take a reckoning of the affairs of the corporation, and steps for the correction of the abuses resulting in wastefulness, and the ruinous policy of administration pursued by the governing board. The bill alleges their failure to heed all of his suggestions, and to rectify the course of management pursued by the board. While complaint was made of the incompetency of the defendant Purdy, of his unbusiness-like methods and wasteful management, as also the amount of compensation allowed him by the directors, there was neither in the letter of grievance nor in the former bills of complaint any allegation or pretense that Purdy was guilty of any malversation in the local agency of the corporation, or that he had misappropriated a cent of the corporate property. And when the present bill is correctly analyzed it is apparent from its repeated averments that whatever course was pursued, action taken, or thing done by Purdy was under the constant surveillance, direction, and policy of the board of directors. The framer of the present bill for the first time joined Purdy as a party defendant, and it is quite apparent to the court's mind that the principal object in mind in thus joining him as a defendant was to prevent the submission of the cause to the judgment of the court which had ruled upon the former bills.

It is to be conceded that in determining the question of jurisdiction and removal the court has nothing to do with the underlying motive of the actor, except in so far as it may appear on the face of the bill or evidence aliunde. Does the bill on its face state a joint cause of action against the corporation and Purdy? The entire substance of the allegations in respect of the accountability of the defendant Purdy are as follows: First. That shortly after the organi-

zation of the company it established at Neosho, Mo., a general office and agency in about the year 1887; that the defendant Purdy was placed in charge as general manager, and has ever since so continued; and that he has failed to keep books of account, records of land sales, and contracts for the sale of lands, and other documents pertaining to the business of the corporation. Second. That the said Purdy, and the persons associated with him in said office as clerks, assistants, etc., have been conspiring and confederating with the directors and officers of the company in Edinburgh, Scotland, and are conducting the business of said company in accordance with said conspiracy; and that acting upon instructions received from said directors continue to refuse to allow the American shareholders permission to examine the books, contracts, and other papers of the corporation, or to have extracts, memoranda, and copies thereof, and have withheld from the complainant and other American shareholders information respecting the business of said corporation, and the results thereof, except as gathered from the annual reports made and issued by the directors and officers of said corporation at Edinburgh, Scotland, which have been incomplete and unsatisfactory; and that the object of this, on the part of the directors and officers, was to exclude from the complainant information respecting the affairs and transactions of the corporation, in order to conceal the ruinous policy and business methods adopted and pursued by the directors in the management aforesaid, "with the approval of the majority of the shareholders, and to enable them to protect themselves against the consequences thereof by buying in the shares of said company at small valuations, based upon such reports of the affairs of said company as it may suit their interests to make public." Third. That the management of the property of the defendant company as trustee has been such as to substantially defeat the object and purposes of its shareholders in entering into such relation. It is distinctly averred "that the methods and policy pursued by the directory of said company, which, against the remonstrances and protests of plaintiff and other American shareholders, have been ratified and approved by the great majority of the shareholders, who are residents of Scotland, and under the immediate influence and control of said directory, have resulted in serious delays in the conversion of the property acquired by said company, entailing large and unnecessary payments for interest and expenses of operation, in addition to actual losses and misappropriations of money and assets as hereinbefore explained." The apprehended danger of further losses is then averred to result from the further pursuit of this policy by the directors. It is then finally averred that the defendant Purdy is, and has been, under the complete control and management of said directors, and obeys their instructions and wishes in all respects; and that he has conspired and confederated with the directors, and assisted them in the mismanagement of the business affairs of the defendant corporation as aforesaid; and that he has assisted them in the mismanagement, squandering, and concealing of the funds and assets of the defendant corporation, and has failed to account to the corporation therefor, and has failed to institute suits against the officers and agents of the

corporation for the recovery of the funds and assets of the corporation squandered and concealed and unaccounted for. The bill then states that the complainant, being remediless under the rules of the common law, can only obtain relief in a court of equity, and says: "To the end, therefore, that the said defendant company, the Missouri Land & Live Stock Company, Limited, may full, true, direct, and perfect answer make to all and singular the matters and things hereinbefore alleged and charged." It does not demand of the defendant Purdy that he make any answer at all; nor does it demand that he make discovery. From which it is apparent that whatever Purdy did was as manager, under the control and direction of the board of directors. The charge of conspiracy is a mere brutum fulmen, for the conspiracy with the directors was only "in the management of the business and affairs of the defendant company as aforesaid." If he was acting, as the bill repeatedly avers, under the board's direction, to whose orders and policy he was subject, he is in no legal sense a necessary party to have the wrongs of administration righted, as a check on the governing body of the corporation would effectually put an end to the power for mischief of their supple instrument.

"The only necessary parties defendant to such a controversy are the persons having the legal control and responsibility of the enterprise. A decree against them binds their servants, agents, and officers; and, where a corporation is the principal, no amount of mere pecuniary interest in the corporation by an individual stockholder will make him a necessary or indispensable party." New York v. New Jersey S. S. Transp. Co. (C. C.) 24 Fed. 817.

Further on, the court, in the course of its opinion, said:

"It is clear, therefore, that the defendant Starin is the only defendant, besides the corporation, concerning whom, upon the record, there can be any doubt that he is an unnecessary party. But, even as respects Starin, the fair inference from the whole record is that neither in law nor in equity does he stand in the attitude of a responsible operator of this ferry; and that the complaint does not mean to make any such averment. He may, and doubtless does, have a warm personal interest in the success of the enterprise. He may own, indirectly, a large part, or even the whole, of the stock of the corporation. He may thereby possibly influence and direct the election of its officers, and in that sense be said to be 'actually operating the ferry;' but unless he is directly and legally responsible personally for the running of the alleged ferry in other ways than these, he is not a necessary party to this suit. Every corporation must have its stockholders, its officers, and its managers. Whether these are few or many, and whether its business through them be controlled by one man or by many, is wholly immaterial. The corporation, so long as it is in the possession and management of its business affairs, is the only party directly responsible, and the only party necessary to a suit like this. * * * I regard it as obligatory upon the court to scrutinize the complaint thus rigidly, and to make no intendments in the complainant's favor upon a question of this character, because there are indications in the record of an attempt to prevent a trial in the federal courts through the joinder of defendants in no way necessary to the determination of the real issue; and because, if the cause were remanded, and it should turn out on the trial that these general averments of the complaint in regard to Starin and others were not sustained in any different sense from that above referred to, the cause might still proceed to judgment against the corporation in the state court, though the individual defendants were clearly shown to be unnecessary parties; and the corporation would thus be

deprived of the right of a trial in the federal courts, which the United States statute was designed to secure to it."

See, also, Wood v. Davis, 18 How. 470, 15 L. Ed. 460.

The bill does not charge defendant Purdy with misappropriation or concealment of any assets of the corporation. The allegation of the bill in this respect is only that he aided the board of directors in the matter of managing and conducting its business, whereby losses to the company ensued. If he merely aided the directors, as the bill charges, in subservience to them, of what avail is the phrase, "and has failed to account to the company therefor"? This, taken in its connection, is but words, or at most is but the sequence of the antecedent predicate, that as the pliant agent of the directors he had combined with, obeyed, and aided them in the work of wasteful mismanagement, giving cause for the appointment of a receiver, and the taking charge of the corporate property and the winding up of its affairs by a court of equity. No decree in personam could go against him on the bald averment that "he failed to account to the company therefor." What property, what fund, what money has he concealed, or applied to his own use? The bill does not even by implication charge that he has in his possession any property or assets of the corporation wrongfully. It states no fact upon which a judgment in personam could go against him. And as his possession of any property of the corporation is the possession of the corporation, by all the authorities he is not a necessary or indispensable party to this bill. As said in Black's Dill. Rem. Causes, § 87:

"Where the officers of a corporation are made codefendants with the corporation to a suit in equity, but no relief is prayed for as to any of such officers that is not prayed for in respect to the corporation, and no relief is asked against any such officer in his individual capacity, the officers are merely nominal parties to the suit, and their personal citizenship will not affect the question of federal jurisdiction. So, in a suit to enjoin the execution of a lease by a railroad company, or a suit involving the title to lands alleged to have been fraudulently conveyed by a corporation, the officers or directors of the company are not such necessary parties to the suit that their citizenship will affect the right of removal of the cause to the federal court."

This whole question is aptly summed up in 18 Enc. Pl. & Prac. pp. 195, 196:

"It is well settled that in applications for removal on the ground of diverse citizenship the citizenship of formal parties, or nominal parties, or parties without interest united with the real parties will be ignored, and the citizenship of the real parties is alone to be considered. The rule is usually laid down substantially in that form, but a more accurate and satisfactory statement is that the citizenship of one who is not an indispensable party will be disregarded."

The court of appeals of this circuit, speaking through Judge Caldwell, also has said:

"It is only parties who are necessary to the determination of the real controversy whose citizenship or presence on record will defeat the right of removal." Shattuck v. Insurance Co., 7 C. C. A. 386, 58 Fed. 609, 610.

See, also, Myers v. Murray, Nelson & Co. (C. C.) 43 Fed. 695, 11 L. R. A. 216.

While it is to be conceded that the supreme court in its later rulings holds that, if the petition of the plaintiff alleges a joint liability of all the defendants it would ordinarily prevent a removal where one of the defendants is a resident citizen of the state of venue, it does not hold that this will preclude an examination of the entire petition to determine whether or not as a matter of fact and law there is a joint cause of action and relief stated against the resident defendant. In other words, the question still remains to be determined whether he is a mere nominal or an indispensable party to the relief ultimately sought by the suit. As the local manager is but the agent, the servant, of the company, the mere fact of his aiding and abetting the governing board of directors in carrying out their policy of administration to the injury of the stockholders would not make him a necessary party, under the statute in question, for the appointment of a receiver, the winding up of the affairs of the corporation, and the distribution of its assets among the shareholders. So, even if it were distinctly charged against the defendant Purdy that he had embezzled or misappropriated the assets of the company received by his manager (which this bill does not allege), no joint cause of action would lie against him and the board of directors at the suit of a single shareholder most certainly, unless the bill distinctly allege that the board of directors co-operated with him in the particular act of defalcation. Especially is this true in the absence of any state statute authorizing such proceeding by a shareholder in an alien corporation governed by an alien board of directors. A stockholder, even in the case of a domestic corporation, would have no standing in the local court to go around the directory to maintain a suit against a defaulting agent of the corporation without averring distinctly and specifically in what the defalcation consisted, and charging the failure of the directors to take action against him after request made to them by the complaining shareholder to proceed against him. If an individual accounting is sought to be had against Purdy for his malfeasance, the averments of the bill should have been so direct and specific as to leave no doubt as to such matter. It is the well-recognized rule of equity pleading that the language must be strictly construed against the pleader. It should be so specific that, if true in point of fact, it would bar another proceeding against him. As said in U. S. v. Linn, I How. III, II L. Ed. 66:

"The reason assigned for this rule of construction is that it is a natural presumption that the party pleading will state his case as favorably as he can for himself. And if he do not state it with all its legal circumstances, the case is not in fact favorable to him, and the rule of construction in such case is that, if a plea has on the face of it two intendments, it shall be taken most strongly against the defendant (the pleader); that is, the most unfavorable meaning shall be put upon the plea."

This rule of pleading should be strictly observed where it is sought to defeat the removal of a case from the state court to the federal court by joining with a nonresident defendant a local defendant under the circumstances of this case. See New York v. New Jersey S. S. Transp. Co. (C. C.) 24 Fed. 817–822; Arapahoe Co. v. Kansas Pac. Ry. Co., 4 Dill. 283, Fed. Cas. No. 502; Shepherd v. Bradstreet Co. (C. C.) 65 Fed. 142–144.

While I do not think it at all necessary to the maintenance of the jurisdiction in this case to hold that the underlying purpose in making Purdy a codefendant in this case was to prevent the removal of the controversy into this court, yet, in addition to the history of this controversy hereinbefore given, the depositions taken in the case to be used on the hearing before the state circuit judge, and which are a part of the record herein, furnish persuasive proof that this complainant was possessed of no information or knowledge which would justify an honest man in believing that there was any individual liability on the part of Purdy. Aside from the depositions of the managing board of directors of the defendant company, showing that Purdy had accounted to the company for every dollar that came into his possession as local manager, and that whatever he did was under their direction and close supervision, the complainant was put upon the witness stand, and in his cross-examination by defendant's counsel was asked to state and specify what knowledge or information he had as to the conversion or appropriation of any of the funds by the defendants. He could not, and did not pretend to, make a single specification of any particular fund or asset that had been misapplied or self-appropriated by Purdy or any of the defendants; leaving no question but that the whole gravamen of his complaint is the losses resulting to the company and the impairment of the value of the stock by reason of the alleged mismanagement and unbusiness-like methods pursued under the policy of administration of the board of directors and the local manager in carrying out their policy. This testimony of the complainant, taken in connection with the antecedent bills of complaint herein and the repetition of the same essential matters in the present bill, leaves no doubt in my mind that the joining of the defendant Purdy in this suit was solely for the purpose of preventing the defendant corporation from removing this controversy into this court.

Moreover, this suit being confessedly based and dependent upon the act of the state legislature of March 13, 1901, it must stand or fall by the provisions of the act. Under the emergency clause (section 2) it is declared that there is no law protecting the rights of a Missouri shareholder in an alien corporation, and therefore this act ought to go into immediate effect. The complainant's rights, therefore, can be no broader or other than those presented by the enabling act. The first substantive, remedial provision of the act confers jurisdiction on the state court, where such alien corporation has property in the state, to compel the directors, managers, trustees, or other officers "to account for their official control in the management and disposition of the funds, property, and business committed to their charge, and to restrain and prevent any alienation of the property of the company by said directors, managers, trustees, or other officers in case where it may be threatened, or good reason is shown to apprehend, that it is intended to be made in fraud of the rights and interests of such company or any shareholder." The entire scope of this is to authorize the court to compel the officers, etc., to account for their official control in the management and disposition of the funds, etc. This is made manifest by the succeeding and conse-

quential remedy of authorizing the court to appoint a receiver "to take charge of the business, property, or effects of such corporation, and to collect, sue for, and recover the debts and demands that may be owing, and dispose of and convert into money the property that may belong to such corporation," and authorizing the appointment of a receiver whenever the directors, trustees, managers, etc., are mismanaging or wasting the property and assets of the corporation upon the petition of any shareholder residing in this state, or any of the states or territories of the United States, etc. The act nowhere enables a stockholder to go directly after the local manager by suit in personam to recover from him individually for conversion or misappropriation of any of the corporate assets. Under section 1338, Rev. St. Mo. 1899, which the act of 1901 aforesaid undertakes to amend, to afford relief to a local stockholder, the circuit court of the state was given jurisdiction over the directors, managers, trustees, and other officers of corporations now existing or hereafter organized under and by virtue of this article:

"First, to compel such directors, managers, trustees and other officers to account for their official conduct in the management and disposition of the funds, property and business committed to their charge; second, to order, decree and compel payment by them to the corporation which they represent, and to its creditors, of all sums of money and of the value of all property which they may have acquired to themselves, or transferred to others, or may have lost or wasted by any violation of their duties or abuse of their powers as such directors, managers, trustees or other officers of such corporation."

This statute, it will be observed, has exclusive reference to corporations organized under and by virtue of "this article,"—that is, under the general statutes of the state of Missouri; whereas, in the act of 1901 the legislature made it applicable to an alien corporation doing business in this state in so far as the first clause of this section is concerned, but entirely omitted the provisions of the second clause thereof, which gave jurisdiction to proceed in personam against the directors, managers, trustees, and other officers of the company individually. The court, in applying this new act of the legislature, must assume that the second clause of the old statute (section 1338) was left out for a purpose. The obvious reason for it is found in the fact that the latter act leaves it chiefly to the function of the receiver to be appointed by the court "to collect, sue for, and recover the debts and demands that may be owing to such corporation." This is a specific remedy furnished by the act for recovering any demand the corporation may have against its manager and officers. It is the method, and the only method, designated and contemplated by this act for a personal judgment against the manager. "When a statute gives a new and extraordinary remedy, and directs how the right to the remedy is to be acquired or enjoyed, the act should be strictly construed, and the steps pointed out for the enjoyment of the remedy provided should be construed as mandatory, rather than directory or optional." Lumber Co. v. Hubbert, 50 C. C. A. 435, 112 Fed. 718. Therefore, even if it could be said that the bill charges the defendant Purdy so as to authorize a judgment against him in personam, which can be the only ground of proceeding against him, he is not an in-

dispensable party to this bill to enable the complainant to proceed, under the act against the corporation as such. It is to be kept in mind that, as the bill discloses that the directors are all aliens, and they are not served with process, and cannot be served therewith so as to authorize any judgment against them in personam, the cause must proceed, if at all, solely against the corporation as such in the effort to wind up its business in this country by distributing its assets among the shareholders.

Stress is laid by complainant's counsel upon that portion of the prayer for relief which asks that the defendants, and each of them, "be enjoined from any further disposition of the property and assets of the company, or interfering therewith in any manner." It is a complete answer to this to say that an injunction against the corporation to prevent any further disposition of its property would effectually bind the agents and servants of the company. The latter are in no sense necessary parties to the effectual operation of such an injunction. It is the usual practice, in granting injunctions against corporations to prevent the removal and disposition of corporate property, to extend it to the agents and servants of the corporation; and it is just as effectual and binding on such agents and servants as if they were parties defendant to the bill. Furthermore, there is nothing disclosed by the bill, or by the charter of the corporation or its by-laws, which indicates that the manager of the corporate property in this state has the power to convey or dispose of the company's property. No conveyance of realty by an agent could be made effectual without a deed duly executed by the corporation. Nor does the principal bill even aver that Purdy, the agent, is about to convey or transfer the property of the defendant corporation.

The final contention of complainant's counsel on this branch of the case is that in what counsel term the "supplemental bill of complaint" the defendant Purdy is properly joined as a codefendant. What is denominated as a supplemental bill of complaint in counsel's brief is in no sense of the nature of an amendatory or supplemental bill. During the progress of the hearing before the judge for the appointment of a receiver on the original bill of complaint, and after much evidence had been heard thereon, the complainant, merely for the purpose of impressing the trial judge with the idea of a present emergency for the appointment of a receiver, filed in the case an affidavit, in which he made certain statements respecting a purpose on the part of the defendant company to escape the jurisdiction of the state court by removing its offices and agency into another state or territory. No other relief is sought by this affidavit than a request for the appointment of a receiver. Under the state practice under the Code an amended pleading operates as an entire abandonment of the original pleading. Basye v. Ambrose, 28 Mo. 39; Young v. Woolfolk, 33 Mo. 110; Ticknor v. Voorhies, 46 Mo. 110; Breckenkamp v. Rees, 3 Mo. App. 585; Wyler v. Railway Co. (C. C.) 89 Fed. 44. No leave was asked for or granted by the court to complainant to amend the original bill, and it was not understood or contemplated by the parties or the trial judge that this affidavit was considered as a supplemental bill of complaint. This affidavit is a strange medley of inconsistencies and con-

tradictions.   In the first part of it it charges that "the defendant company, with the intent to defraud, etc., has pretended to abandon and discontinue its said office at Neosho, Mo., and, acting through and combining with said defendant Purdy, has pretended to discharge or remove all of its officers and agents connected with said Neosho office, and now claims to have no office or place of business in this state; that said company and said John M. Purdy claim to have also removed and carried all of its books and papers pertaining to its business, and showing its business transactions, out of this state, and beyond the jurisdiction of this court."   As this is the allegation of a mere pretense, and not the averment of a prejudicial act done, it could afford no basis of relief.   The affidavit in the following connection charges an attempt to remove the parties and their property from this state and the control of its courts.   Then the affidavit proceeds to state, finally, that, after diligent inquiry made by the complainant, he had discovered that there had in fact been no removal to the designated points in Arkansas or the Indian Territory, and no agency established there.   And, as already stated, as no injunction was prayed for to restrain the parties from the alleged threatened removal, and the only request made in this affidavit was merely for the appointment of a receiver, the defendant Purdy in no conceivable legal sense was a necessary party to the relief sought.   A receiver appointed on such a bill against a corporation, or under an affidavit made against it, would effectually operate upon and bind the agents and servants of the corporation.   The court does not feel called upon to express any opinion as to the constitutionality of the act of 1901 of the state legislature, for the reason that the only question before this court raised by the motion to remand is as to the jurisdiction of the court over the real parties to this controversy, dependent upon the fact of diverse citizenship.

Did the proceedings had in the state court for the appointment of a receiver bar the right of removal to the alien defendant?   The judiciary act of 1888 (25 Stat. 433) authorizes a nonresident defendant (which applies as well to an alien corporation), when sued either at law or in equity in any state court, where the amount in controversy exceeds $2,000 exclusive of interest and costs, to remove the same into the United States circuit court.   The only limitation as a condition precedent to this right is that he shall "make and file a petition in such suit in such state court at the time or at any time before the defendant is required, by laws of the state or rule of the state court in which such suit is brought, to answer or plead to the declaration or complaint of the plaintiff," and that he shall give the required bond.   The defendant corporation complied strictly with this statute.   And as he is not required to make such application before he is required by the statute of the state or rules of the state court to plead or answer to the declaration or complaint, how can the court, without a judicial amendment of the act of congress, hold that if, before he is required to make answer or plead to the complaint, he appears in vacation before the state judge to resist the preliminary application for the appointment of a receiver, to displace his dominion over his property, he has thereby pleaded or answered to the declaration or complaint?   The state

statute (Rev. St. Mo. 1899, § 753) gives the court, or any judge thereof in vacation, power to appoint a receiver whenever such appointment shall be deemed necessary, whose duties it shall be to keep any money or other thing deposited in court, or that may be subject to a tender, and keep and preserve all property, and protect any business or business interests intrusted to him, pending any litigation or equitable proceeding concerning same, subject to the order of the court. The whole purpose of such receivership is "to preserve the property contested for pendente lite," and "it has no effect of itself upon the title to such property, either to change it or create a lien upon it. The appointment of a receiver determines no right as between the parties, nor does it affect the title to the property in any way. It is not an ultimate determination of the right or title, and in passing upon the application the court decides no questions of right involved, nor anticipates its final decision upon the merits." Beach, Rec. (Alderson's Ed.) § 4. As said by High on Receivers (3d Ed. § 6), the appointment of a receiver pendente lite is a mere provisional or auxiliary remedy, "invoked as an adjunct or aid to the principal relief sought by the action, and not always or necessarily the ultimate object of that action. The application for a receiver may succeed or fail, and yet in no manner affect the principal controversy, or determine the final result. And in this respect the appointment of a receiver in limine bears no closer relation to the action in which this extraordinary relief is sought than an attachment in aid of an action upon a promissory note bears to the action. * * * The decision upon the application for a receiver pendente lite is, therefore, without prejudice to the final decree which the court may be called upon to make, and the court expresses no opinion as to the ultimate questions of right involved. And if the plaintiff presents a prima facie case, showing an apparent right or title to the thing in controversy, and that there is imminent danger of loss without intervention of the court, the relief may be granted without going further into the merits upon the preliminary application. Indeed, upon an interlocutory application for a receiver a court of equity usually confines itself strictly to the point which it is called upon to decide, and will not go into the merits of the case at large, since the court is bound to express its opinion only to the extent necessary to show the grounds upon which it disposes of the application." The preliminary hearing on the application for the appointment of a receiver in this case before the judge in vacation does not contemplate any pleading or answer by the defendant to the bill of complaint. Upon short notice the defendant appeared before the judge at a chamber hearing, and ore tenus resisted the application for the appointment of a receiver pendente lite. The fact that the defendant assailed the validity of the act of 1901 under which the proceeding was claimed to be brought, and sought to show there was no occasion in law or fact for such preliminary preservative action, no matter how wide the scope of the inquiry was, in legal contemplation it was limited to the single question as to whether or not the court should exercise its mere discretionary power in appointing a receiver pendente lite. His action one way or the other in no wise affected the merits of the suit, any more than if the defendant had not appeared at

this preliminary hearing, and the court, on the face of the bill, had appointed the receiver.

We are aware that Judge Shiras, in Chicago, I. & N. P. R. Co. v. Minnesota & N. W. R. Co. (C. C.) 29 Fed. 337, held, under the act of 1875, that an appearance to resist an application for a temporary injunction, and an appeal from the action of the court in granting the same, prior to the time when the defendant was entitled to a removal, prevented a subsequent removal of the controversy. This opinion was based upon two propositions: First, that the statute of Iowa forbade the issuance of a temporary injunction except where the petition showed facts sufficient to entitle the plaintiff to the relief sought, and that, when the temporary injunction was tried, the court determined the merits of the case far enough to pass upon the sufficiency of the petition; and, second, that the case could not be divided into two parts, and therefore, when an appeal was taken to the supreme court on a part of the case then there, it could not be so divided that the remainder could be removed. Waiving any expression of opinion as to whether that ruling is to be differentiated from other rulings of the courts by reason of said special provision of the Iowa statute, it is sufficient to say that it is, in my humble judgment, against the weight of authority and a proper construction of the removal statute of 1888. Judge Barr, in Freeman v. Butler (C. C.) 39 Fed. 1, brought under the act of 1887, expressly held that a preliminary contest before the court respecting the appointment of a temporary receiver, from which an appeal was taken to the court of appeals of Kentucky, did not bar the defendant from afterwards applying for a removal. He observed of the ruling of Judge Shiras that "the court commented upon the fact that the order granting an injunction had been appealed from and superseded, and that before this was done the party had an opportunity of filing his petition for removal in the state court. In the case at bar Butler could not have filed his petition until the term of the state court, which commenced on the 22d of April, which was the day upon which he did file it. The order of the judge of the state court appointing a receiver was appealable, but it could not be superseded." And the court further said that he was of the opinion that "the effect of the petition to remove to this court was an abandonment of the appeal." In Franklin v. Wolf, 78 Ga. 446, 3 S. E. 696, the state court, before the time of removal transpired, had appointed a receiver and granted a temporary injunction. It was held that the defendant could thereafter remove the case. The court said:

"We think that the proceedings which were heard by the court in this case in granting this injunction, the appointment of a receiver, and other acts entered into, were merely preliminary or ancillary to the main cause of action. The object of the appointment of a receiver was to maintain the status quo. There was no decision upon the merits. It was not intended to be a trial of the case, and was not a trial of any of the issues that could be formed upon the bill of complaint."

It is to be kept in mind that the decision of Judge Shiras was based upon the act of 1875, which provided that the petition for removal must be filed "before or at the term at which said cause could be first tried, and before trial." The language of the act of 1888 is different,

as already shown. In Gavin v. Vance (C. C.) 33 Fed. 84, it was held by Judge Hammond that, although the answer was prematurely filed, the right of removal existed under the statute up to the time when the answer was required to be filed. So Judge Key, in Tan-Bark Co. v. Waller (C. C.) 37 Fed. 545, held that, inasmuch as the act of 1888 did not provide that the petition for removal should be filed before trial, or even before the party answers or pleads, but must be made at the time or before the defendant is required to answer or plead, did not prevent a removal, although motions or demurrers may have been disposed of prior thereto. In Lockhart v. Railroad Co. (C. C.) 38 Fed. 274, Judge Hammond held that a trial on a plea in abatement before the time required to answer did not bar the right of removal. In Conner v. Coal Co. (C. C.) 45 Fed. 802, Judge Hanford held that, although the defendant, 10 days prior to the filing of the petition and bond for removal, had voluntarily appeared in the state court by filing a general demurrer, he was not precluded from a removal within the time prescribed by the statute. In Purdy v. Wallace, Muller & Co. (C. C.) 81 Fed. 513, Judge Brown, as did Judge Baker in Whiteley Malleable Castings Co. v. Sterlingworth Ry. Supply Co. (C. C.) 83 Fed. 853, held that the filing of a bond in the state court to release an attachment, and the filing of a demurrer in the latter case, did not prevent the right of removal within the time prescribed by the statute, for the reason that these acts did not amount to an estoppel, as they were "proceedings collateral and incidental to the suit, and every right in respect to the cause of action disclosed in the complaint remains unaffected thereby. These proceedings do not evince a plain purpose to waive the right of removal." And while the filing of a demurrer is the filing of an answer, within the meaning of the removal act, yet "that act does not provide that the petition for removal shall be filed in the state court before the filing of an answer or plea. It provides that the petition for removal may be filed at the time or at any time before the defendant is required by law or rule of court to answer or plead to the complaint. * * * To operate as a waiver, the act of the party must be irreconcilably repugnant to the assertion of his legal right." Again, in Garrard v. Silver Peak Mines (C. C.) 76 Fed. 1, the state court had, without notice, issued an injunction. The defendant appeared, and was heard on a motion to dissolve, whereat the injunction was modified. It was held that this did not preclude the right of removal, where the defendant appeared within the time prescribed by the statute. So it has been held that, where a nonresident defendant appeared and urged a motion to dismiss the case for want of proper service, and filed a bill of exceptions after an adverse ruling, that such action on his part did not constitute a waiver of the right of removal, for the reason that "at no time did the defendants submit themselves to the jurisdiction of the court on the merits." This is followed in Champlain Const. Co. v. O'Brien (C. C.) 104 Fed. 930. See, also, Carrington v. Railroad Co., 9 Blatchf. 468, Fed. Cas. No. 2,448.

It does seem to me that in view of the provisions of section 4 of the Act of 1875, which is still in force, which provides that "all injunctions, orders and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the

court to which such suit shall be removed," the conclusion is irresistible that it was in the contemplation of congress, in enacting this statute, that there would be injunctions and orders and proceedings of a preliminary character had by the state court prior to the time when the right of removal was accorded by the statute to the nonresident defendant; and that, therefore, such preliminary hearings and controversies would constitute no bar to a removal of the case, which the statute gives to the defendant on petition to be filed before he is required to plead or answer to the complaint. As a waiver is "the intentional relinquishment of a known right" (28 Am. & Eng. Enc. Law, 526), I do not perceive how the mere appeal from the decision of the state court in appointing a temporary receiver can be held to be a waiver of the right. As soon as this defendant was notified that an application would be made to the circuit judge in vacation for an order appointing a receiver, the defendant notified complainant's counsel of his intention to present an application for a removal of the cause. And before the court had concluded the hearing upon the application for the appointment of a receiver the defendant presented to the judge his petition for removal, which the judge declined to pass upon, for the reason that he held he could not do so until he was sitting in court term; and, although it was but a few days until his court would be in session, when he was advised that the application for removal would be renewed, he nevertheless proceeded to hear the motion for the appointment of a receiver, and made the appointment. Forsooth, the defendant thus was compelled either to stand by silently or to resist the appointment of a receiver in the assertion of its dominion over and control of its property, it would be a harsh construction of this statute, conferring a valuable right of removal upon such alien corporation, to hold that it lost the right by such resistance. How can the fact of the taking an appeal to the supreme court from such appointment, made in vacation, as the state statute provides, affect this question? Beginning with the case of Insurance Co. v. Dunn, 19 Wall. 214, 22 L. Ed. 68, and the Removal Cases, 100 U. S. 457, 25 L. Ed. 593, it has been the recognized rule of practice that the appearance of the defendant in a state court, contesting the suit there, and appealing therefrom to the state supreme court, and on to the supreme court of the United States, does not constitute a waiver of the right of removal where the party had complied with the statute entitling him thereto, which right had been denied by the state court.

I am inclined to the opinion that the suggestion made by Judge Barr in the case supra that the removal of the cause from the state court into the federal court may operate as a discharge of the appeal taken to the supreme court is correct. On the removal of the case "the controversy," in its entirety, between the parties, passes under the jurisdiction and control of this court, and the jurisdiction of the state court over the matter of controversy between the parties ceases.

The propriety of the continuation of the receivership after removal rests solely with the federal court. The receiver may be dismissed or continued, in the sound discretion of the court.

The motion to remand is denied.