UNION TERMINAL RY. CO. v. CHICAGO, B. & Q. R. CO. et al.

(Circuit Court, W. D. Missouri, St. Joseph Division. November 19, 1902.)

1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—JOINT ACTION.

Where a petition in a state court alleges a joint cause of action against a resident and a nonresident defendant, the cause is not removable on petition of the nonresident, unless he both alleges and proves to the satisfaction of the court that the local defendant was joined for the fraudulent purpose of preventing a removal. It is not sufficient that the petition for removal avers that the resident defendant has no interest in the controversy or that the cause of action in fact is not joint, nor that the answers raise a separable controversy or show that one of the defendants is not liable.

2. SAME—FRAUDULENT JOINDER OF DEFENDANT TO PREVENT REMOVAL.

In a proceeding by a railroad company to condemn right of way over certain lands, under Rev. St. Mo. 1899, § 1264, which provides that it shall not be necessary to make any persons defendants, unless they are either in actual possession of the premises, claiming title, or have a title of record, two railroad companies, one a foreign, and the other a local, corporation, were made defendants. It was not alleged that the local company was in possession, claiming title, and there was of record in the proper records of the county a deed which plaintiff's counsel examined before suit, by which such company had conveyed to its codefendant all of its property, real or personal, of whatever kind and wherever situated, together with all its rights and franchises, except its franchise to be a corporation. Nothing appeared from said deed to afford any reasonable ground for belief that any interest in or connected with the property which could be condemned by plaintiff remained in the local company. Held, that the conclusion must be drawn as matter of law,

---

¶ 1. Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86, and Mecke v. Mineral Co., 35 C. C. A. 155.

from such facts, that the improper and unnecessary joinder of such company was for the purpose of preventing a removal of the cause by the nonresident defendant.

3. SAME—JURISDICTION OF FEDERAL COURT—PROCEEDING TO CONDEMN RIGHT OF WAY.

A proceeding instituted by a railroad company under the statute of Missouri to condemn right of way, which is a judicial proceeding under the state constitution, is a "suit of a civil nature at law," of which a circuit court of the United States is given jurisdiction by section 1 of the judiciary act of 1887–88 [U. S. Comp. St. 1901, p. 507], where there is a controversy therein between citizens of different states in which the matter in dispute exceeds $2,000, and is removable by the nonresident defendant under section 2 of the act, although the plaintiff could not have instituted it in that court, owing to the limitation of the state statute, which confines it to a particular state court.

## On Motion to Remand to State Court.

The plaintiff, a Missouri corporation, filed its petition in the state circuit court of Buchanan county, Mo., against the Chicago, Burlington & Quincy Railroad Company (hereinafter called the "Burlington Railroad"), an Illinois corporation, and the Kansas City, St. Joseph & Council Bluffs Railroad Company (hereinafter called the "Council Bluffs Railroad"), a Missouri corporation, to have condemned for the plaintiff's use certain lands at the city of St. Joseph, in Buchanan county, Mo., alleged to be owned by the defendant companies. The proceeding was had before the circuit judge in vacation, as authorized by the state statute. Summons was issued to the defendant companies, who appeared and filed answer to the petition, raising issues of law and fact as to whether the property sought to be condemned was liable to be so taken and appropriated by the plaintiff, etc. The defendant Burlington Railroad Company alleged in its answer that it was the sole owner of the property sought to be condemned, having acquired the same by deed of conveyance from the defendant Council Bluffs Railroad Company. The latter company by its separate answer alleged that it had no interest whatever in the property sought to be condemned, having hitherto conveyed all of its right, title, and interest to the Burlington Company. At the time of the filing of these answers the Burlington Company presented its petition, with sufficient bond, for the removal of the cause into the United States circuit court. After alleging that the Burlington Company was a nonresident corporation and that the amount in dispute exceeded $5,000, exclusive of interest and costs, it set up the deed of conveyance to it from the Council Bluffs Company, and alleged that it was the sole owner of the property in controversy, and that this fact was known to the plaintiff when the petition for condemnation was filed herein, and that the resident company was made a party defendant for the fraudulent purpose of preventing the Burlington Company from removing said proceeding into the United States circuit court. The petition for removal was granted, and the plaintiff has filed a motion to remand, which has been heard and submitted on proofs.

Brown & Doran, for plaintiff.

Willard P. Hall and Mosman & Ryan, for defendant.

Before THAYER, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge (after stating the facts). The first question arising on the motion to remand is whether or not the allegations of the petition for removal are true. It is a settled rule of procedure that, where the petition alleges a joint cause of action against a resident and nonresident defendant, the cause is not removable on petition of the nonresident, although it is averred in the petition for removal that the resident defendant has no interest in the controversy or that the cause of action in fact is not joint; nor is it

sufficient that the answers of the defendants raise a separable controversy, or show that one of the defendants is not liable. Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203, 33 L. Ed. 473: Railway Co. v. Dixon, 179 U. S. 131–138, 21 Sup. Ct. 67, 45 L. Ed. 121. But this rule is qualified by the proviso that the defendant moving for a removal may allege and prove to the satisfaction of the court that the local defendant was joined in the action for the fraudulent purpose of preventing a removal by the nonresident defendant. To support the last averment, the defendant Burlington Railroad Company on the hearing of this motion put in evidence a warranty deed in fee from the Kansas City, St. Joseph & Council Bluffs Railroad Company to the Chicago, Burlington & Quincy Railroad Company, of date January 1, 1901, duly acknowledged and recorded in the recorder's office·of Buchanan county, Mo. On its face this deed conveys and transfers to the said Burlington Company all the railroad tracks, depots, switches, property, franchises, and privileges of the said Council Bluffs Company, including its road and track and grounds in Buchanan county, Mo.; the granting clause concluding as follows:

"Together with all roadbeds, rights of way, bridges, depot and terminal grounds, and other lands or interest therein; station houses, buildings, and structures of whatsoever kind; leaseholds, rights under contract, and licenses; locomotives, cars, and other rolling stock and equipment; telegraph lines, supplies, tools, and materials; rents, profits, and income; and all other property, real or personal, of whatsoever kind·and wheresoever situated, now owned by it or hereafter to be acquired, whether appurtenant to the railroad aforesaid or otherwise. Also all rights, privileges, immunities, and franchises belonging to the said first party, except its franchise to be a corporation."

On such sale and transfer from one railroad company to another, it goes without question that every conceivable interest in or right to any property (real or personal), privilege, or immunity belonging or appertaining to the grantor passes to and vests absolutely and unconditionally in the grantee. It is inconceivable that anything in the way of property rights, appurtenances, and privileges owned by the grantor at the time of the grant was reserved, "except its privilege to be a corporation." The plaintiff's counsel admitted at the hearing of this motion that before instituting the condemnation proceedings he saw and examined this deed. It is also such a well-known fact that in such matters, preliminary to the filing of such suit, counsel for the petitioner examines with care the record of conveyances to ascertain exactly where the title to the property is, that it might almost be assumed by a court that this was done. When questioned at the hearing why, in the face of this information and fact, the Council Bluffs Railroad Company was nevertheless joined as a party defendant, the answer was that the deed itself contained a reservation which counsel apprehended made it conservative to join it as a defendant. This alleged apprehension was based upon the concluding clause of the deed, which is as follows:

"And, to the end that the second party may have, hold, use, exercise, and enjoy the railroad and property and franchises of the first party hereby conveyed and intended to be conveyed, and whether now existing or hereafter acquired, as fully as might be done by the first party if this conveyance

had not been made, the first party agrees to execute from time to time any additional assignment, conveyance, or assurance, and to perform any act, which the counsel of the second party may advise; and for the purposes aforesaid the first party agrees, if the second party shall so desire and advise, that it will keep up and maintain its corporate existence and organization."

This provision of the deed was nothing more than of the nature of a covenant for further assurance, and the corporate existence of the grantor was continued merely for the purpose of enabling it, if required by the grantee, to give a further deed of assurance or affirmation. It was finally stated by counsel that, as he sought to acquire by the proceeding certain riparian rights on the Missouri river touched by parcels of the land sought to be condemned, he was apprehensive that possibly such right might be in the Council Bluffs Company, which did not pass under its deed to the Burlington Company. I confess my utter inability to grasp or to find any tangible basis for this contention. As a railroad company, under the laws and public policy of the state, neither could take nor hold any interest in land or its appurtenances, except for the necessary uses of a railroad company as such, the plaintiff has no right or authority to have condemned to its use any other property than land for its railroad. Railroads are not built on water; and the statute authorizing a railroad company to condemn property to its use has reference to such lands and property only as a railroad company may employ for trackage, switch grounds, station or depot houses, and the like. Section 1272 of the Revised Statutes of Missouri of 1899, which provides for condemnation proceedings when the property is held by a corporation, says:

"In case the lands sought to be appropriated are held by any corporation, the right to appropriate the same by a railroad company shall be limited to such use as shall not materially interfere with the uses to which, by law, the corporation holding the same is authorized to put said lands."

If the plaintiff can condemn for its use what the petition calls "riparian rights," as against the defendant railroad company, it was property held by the defendants as railroad companies, and it passed to and vested in the grantee by the all-comprehensive language of the grant. Furthermore, the allegation of the petition, in its legal effect, being that the two defendant companies jointly own the property sought to be condemned, the interest therein of the Burlington Company confessedly being derived under its grant from the Council Bluffs Company, with what consistency can it be maintained that the Burlington Company, under the grant, obtained only a joint interest with the grantor in the riparian rights? If the deed to the Burlington Company conveyed any riparian rights, it conveyed all that the Council Bluffs Company had.

It is a universal rule of law that every person is presumed to know the law. The conclusion, therefore, is inevitable that when the plaintiff joined the local company as a party defendant it knew it was not an indispensable party to this proceeding. It furthermore knew that the very statute (section 1264) under which it was proceeding declared that:

"It shall not be necessary to make any persons party defendants in respect to their ownership, unless they are either in actual possession of the premises

to be affected, claiming title, or have a title to the premises appearing of record upon the proper records of the county."

As it is not averred in the petition that the Council Bluffs Company was "in actual possession of the premises to be affected, claiming title," and it knew that it appeared "upon the proper records of the county" that the Council Bluffs Company had parted with its title, the law draws the necessary conclusion from the facts. Every man is conclusively presumed to intend the natural consequences of his act. There can be but one reasonable conclusion drawn, as matter of law, from the act of improperly and unnecessarily joining the local defendant, and that is that it was done to prevent the right of removal by the nonresident defendant. "The general legal proposition is true that where a person does a positive act, the consequences of which he knows beforehand, that he must be held to intend those consequences." Wilson v. Bank, 17 Wall. 486, 21 L. Ed. 723. From such a state of facts the courts have not hesitated to find, as matter of law, that the purpose of joining such a defendant is sufficient to justify the court in finding that it was done fraudulently to prevent the right of removal. Prince v. Railway Co. (C. C.) 98 Fed. 1–3; Winters v. Drake (C. C.) 102 Fed. 550; Diday v. Railroad Co. (C. C.) 107 Fed. 565.

A more serious question is presented touching the removability of this proceeding under the judiciary act of 1887, as amended in 1888 [U. S. Comp. St. 1901, p. 507]. The first section of this act declares that:

"The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at law or in equity where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States, or treaties made," etc., "under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid."

This is practically the same as the corresponding section of all the antecedent judiciary acts. That such a condemnation proceeding as this, under the judiciary act of 1875, which provided for the removal of any suit of a civil nature, at law or in equity, was removable, is not questioned. The only question under that statute was, when did the proceeding reach the stage when it could be said to be a suit pending? Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Searl v. School Dist. No. 2, 124 U. S. 197, 8 Sup. Ct. 460, 31 L. Ed. 415; Railroad Co. v. Jones (C. C.) 29 Fed. 193; Terminal Railway v. Lumber Co., 37 Fed. 3; Upsher v. Rich, 135 U. S. 464.

The contention now made is that the second section of the judiciary act of 1887–88, which authorizes the removal of causes, is distinguished from its predecessors in that it adds to the words, "any other suit of a civil nature, at law or in equity," the following: "of which the circuit courts of the United States are given jurisdiction by the preceding section;" and because, in construing this new provision, Mr. Chief Justice Fuller, in Railroad Co. v. Davidson, 157 U. S. 201, 208, 15 Sup. Ct. 563, 39 L. Ed. 672, following the ruling

in Tennessee v. Union & Planters' Bank, 152 U. S. 454–462, 14 Sup. Ct. 654, 657, 38 L. Ed. 511, said:

"The jurisdiction of the circuit courts of the United States, on removal by the defendant under this section, is limited to such suits as might have been brought in that court by the plaintiff under the first section."

It was because of this broad language we first inclined to the opinion that, unless the plaintiff might have instituted this condemnation proceeding in the first instance in the United States circuit court, the nonresident defendant was not entitled to remove it; and defendant's counsel on the argument of this case conceded as much, but, as we think, unnecessarily. It is on this branch of the case that Thayer, Circuit Judge, was requested to sit with me on the reargument thereof, which he did.

It is to be observed that the case of Railroad Co. v. Davidson, supra, was a suit by the assignee of a chose in action against a citizen of another state; the said nonresident citizen and the assignor of the chose being citizens of the same state at the time of the assignment. By the concluding paragraph of section 1 of the act of August 13, 1888, suits of that character have been entirely withdrawn from the jurisdiction of the federal courts. Not being, therefore, within the jurisdiction of the United States circuit court, they cannot be removed from the state court under the provisions of the second section of the act. So cases involving a federal question, as specified in the first section, are not within the jurisdiction of the federal courts, unless the petition or bill of complaint discloses the federal question on its face. It was accordingly ruled in Tennessee v. Union & Planters' Bank, supra, that such suit could not be removed where the federal question was not apparent on the face of the complaint. But where there is a controversy between citizens of different states, in which the matter in dispute exceeds $2,000, exclusive of interest and costs, the suit is within the original jurisdiction of the United States circuit court by virtue of said section 1; and therefore, being within its original jurisdiction, such suit is removable under the second section of the act. A close analysis of said section 2 will show that a marked distinction is made therein between cases where the jurisdiction is dependent upon diverse citizenship and those arising under the constitution and laws of the United States, in that the latter are made removable when the circuit courts are given original jurisdiction by the preceding section, while the former may be removed when said courts "are given jurisdiction by the preceding section." As observed by the supreme court of Iowa, in a recent opinion (not yet officially published) in the case of Myers v. Railway Co., 91 N. W. 1076:

"The omission of the qualifying word 'original' seems to have been designed, and compels a different construction."

In re Stutsman County (C. C.) 88 Fed. 337–341, the learned judge very aptly said, respecting the rulings in Tennessee v. Union & Planters' Bank and Railroad Co. v. Davidson, supra:

"An examination of these decisions will show that the limitation mentioned is based, not upon matters of procedure, but upon those elements specified as essential to jurisdiction in the first section of the act of 1887–88. To

confer original jurisdiction, the following facts, and no others, are necessary: (1) A suit of a civil nature at common law or in equity. (2) It must involve at least $2,000, exclusive of interest and costs. (3) It must arise wholly between citizens of different states, or present one of the other conditions mentioned in the last part of the first section. A proceeding which presents these elements is within the original jurisdiction of the federal courts, notwithstanding it may involve matters of procedure which would prevent its commencement in these courts. The section defining the right of removal makes no reference to suits which have been begun in the federal courts, and the phrase, 'of which the circuit courts are given jurisdiction by the preceding section,' ought not to be considered as requiring elements not mentioned in the preceding section. The jurisdiction of the federal courts cannot be made to depend upon formal or modal matters; otherwise, it would be in the power of the states to defeat that jurisdiction entirely by hostile legislation, hedging about the commencement of suits by a stautory procedure which could not be employed in the federal courts."

See, also, Evansville & T. H. R. Co. v. City of Terre Haute (C. C.) 106 Fed. 545; Kirby v. Railroad Co. (C. C.) 106 Fed. 551.

Another difficulty in the mind of the writer of this opinion, when the motion to remand was first argued, was that the legislature of the state by its statute, which conferred upon this local corporation the right of eminent domain, a right in derogation of the common law, and the statute which conferred the right having prescribed the mode of enforcing and enjoying that right, to wit, by presenting a petition to the circuit court of the county where the land is situated, or to the judge thereof in vacation, was mandatory on the plaintiff, and that, as it might not be permitted to lodge such a petition in the first instance in the circuit court of the United States, the nonresident defendant, under the literal application of the broad language of the court in Railroad Co. v. Davidson, supra, was not entitled to remove the cause. This we are satisfied, on further examination, was a misconception. When a state legislature creates a right, not existent at common law, by which the property interests of a nonresident defendant may be taken and appropriated to the use of a corporation of the state, it certainly ought not to be held that the state legislature, having provided a judicial proceeding for the enforcement of such statute, by merely directing that such proceeding shall be brought in the state court, or in some unusual manner not adapted to the procedure in the federal courts, thereby could prevent a nonresident owner of the property sought to be appropriated from removing the case into a tribunal contemplated by the constitution of the United States, supposed to be free from local influence, to have his rights in the premises determined. To so hold would be to admit that the legislatures of the several states have the power to deprive the federal courts of a jurisdiction which was intended to be conferred upon them by the constitution and acts of congress made in pursuance thereof. Matters of mere procedure are not jurisdictional, but personal; and they may be waived. Powers v. Railway Co., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673.

Under the statute of this state authorizing the plaintiff railroad company to condemn lands to its use, which provides that such petition may be lodged in the circuit court of the county where the real estate is situated, or before a judge thereof in vacation, and providing

for the issue of summons to the defendant landowner, returnable within 10 days, the state supreme court holds that under section 20, art. 2, of the state constitution, which provides "that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public," such matter is from its inception to its end judicial in its character; that the defendant owner of the land has the right, in response to such summons, to appear before the circuit court, or the judge thereof in vacation, to challenge the right to condemn, and is entitled to be heard thereon, and from such final adjudication the right of appeal is accorded. St. Joseph Terminal Ry. Co. v. Hannibal & St. J. R. Co., 94 Mo. 536, 6 S. W. 691. And again, in Thompson v. Railway Co., 110 Mo. 147, 19 S. W. 77, the court said:

"The circuit courts, in condemnation proceedings, however, act from their inception judicially, though in conformity with the statutory powers."

As it appears from the answer of the nonresident defendant company, filed in this case contemporaneously with the petition for the removal of the cause, that the defendant company challenges the right of this plaintiff to have the land condemned to its use, because it had already been appropriated to the use of the defendant railroad company, its rights are therefore protected by the statutes of the state. It must follow that such a proceeding is a suit of a civil nature at common law, within the intent and meaning of section 1 of the judiciary act. Chief Justice Marshall, in Weston v. City of Charleston, 2 Pet. 464, 7 L. Ed. 486, speaking to the question as to what constitutes a suit, said:

"The term 'suit' is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords. Modes of proceeding may be various; but, if a right is litigated in a court of justice the proceeding by which a decision of the court is sought is a suit."

It may be conceded that the resident corporation, seeking the exercise of the right of eminent domain, which comes alone from the grant of the sovereign, is compelled to pursue the remedy prescribed by the sovereign, upon the well-recognized principle "that when a statute gives a new and extraordinary remedy, and directs how the right to the remedy is to be acquired or enjoyed, how it is to be enforced, the act should be strictly construed; and the steps pointed out for the enjoyment of the remedy provided should be construed as mandatory, rather than directory or optional." Lumber Co. v. Hubbert, 50 C. C. A. 435, 112 Fed. 718–725; Sidway v. Live Stock Co. (C. C.) 116 Fed. 389. But this restriction upon him is quite distinguishable from the rights of the nonresident property owner. His right of property in the subject sought to be appropriated by the resident corporation is under the protection of universal law, inhering in which is the right that his property shall not be taken, even for public use, without due process of law,—the right of trial before an impartial tribunal, free from local prejudice, which the federal constitution and the judiciary act were intended to secure by according

to him a hearing in a United States court.  He has the right, according to common usage, to demand the process of the court to enforce the attendance of witnesses, to produce evidence governed by common-law methods and rules, and the right of appeal.  So that, as between the resident plaintiff and the nonresident defendant, the proceeding once instituted thereafter partakes essentially of the nature of a suit at common law.

In a condemnation proceeding the courts of Missouri act as in other trials at law.  They are governed by the same rules of evidence.  They settle issues of fact and issues of law as they arise as in other cases, notwithstanding the fact that the proceeding is statutory and somewhat summary in its character.  It would therefore seem that if a nonresident's property is sought to be taken and subjected to a public use, as claimed by this plaintiff, he should be entitled, if he so elects, to have a federal court determine whether or not the conditions upon which the local laws authorize his property to be condemned have been fairly and fully complied with, because by the statute the local court is empowered to hear and decide such questions as between a local corporation and a citizen of the state; and this, notwithstanding the local plaintiff, invoking the privileges conferred by the local statute to exercise the right of eminent domain, may be required on his part to initiate the proceeding in the form and before the tribunal prescribed by the statute conferring the right.  When the case has been removed into the federal court, it can and should pursue the course of procedure in the trial of the issues and the appointment of commissioners as prescribed by the local statute.  By this course both the form and substance are observed and preserved.

It results that the motion to remand is denied.

THAYER, Circuit Judge, concurs.