SOUTH DAKOTA CENT. RY. CO. v. CHICAGO, M. & ST. P. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 20, 1905.)

No. 2,268.

1. REMOVAL OF CAUSES—CIVIL SUITS—CONDEMNATION PROCEEDINGS.

A proceeding by a railroad company to condemn right of way under the statutes of South Dakota is a civil suit, within the meaning of the federal judiciary act (Act March 3, 1887, c. 373, § 1, 24 Stat. 552; Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), and is removable where the requisite diversity of citizenship exists and the jurisdictional amount is involved.

2. SAME—DIVERSITY OF CITIZENSHIP—SEPARABLE CONTROVERSY.

A proceeding by a railroad company to condemn right of way under the statutes of South Dakota against a number of defendants owning land in severalty presents a separable controversy with respect to each owner, and is removable by a defendant, who is a citizen of another state, where the requisite amount is involved to give the federal court jurisdiction.

[Ed. Note.—Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

3. SAME—AMOUNT IN DISPUTE.

An allegation, in a petition for removal, that the amount in dispute exceeds $2,000, exclusive of interest and costs, is sufficient to give the federal court jurisdiction, although there may be no proof given on the trial to sustain it.

[Ed. Note.—Jurisdiction of federal courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

4. SAME—TIME FOR FILING PETITION.

Where a summons served on September 16th required defendant to appear and plead within 20 days, exclusive of the day of service, a petition for removal filed on October 6th was in time.

5. EMINENT DOMAIN—RAILROADS—RIGHT TO APPROPRIATE RIGHT OF WAY OF ANOTHER COMPANY.

The statutes of South Dakota conferring the power of eminent domain on railroad companies (Civ. Code, §§ 488, 505), while authorizing one railroad company to "cross, intersect, join and unite its road with the railroad of any other company," do not authorize it to build its road longitudinally upon the right of way of another company, and in the absence of such statutory authority it cannot condemn a right of way to do so.

6. SAME—PROCEEDINGS TO CONDEMN CROSSING—CONDITION PRECEDENT.

Under Civ. Code S. D. § 488, which confers upon a railroad company the right to cross with its tracks the road of any other company, and provides that, if the two companies are unable to agree as to the compensa-

tion to be made or the point or manner of crossing, the same may be determined by condemnation proceedings, an effort to make an agreement is a condition precedent to the right to maintain condemnation proceedings.

In Error to the Circuit Court of the United States for the District of South Dakota.

Joe Kirby for plaintiff in error.

H. H. Field (Porter & King, on the brief), for defendants in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge. The South Dakota Central Railway Company, a corporation organized under the laws of South Dakota (hereinafter called the "Central Company"), filed its application in the circuit court of Minnehaha county, S. D., to condemn, for its use as a right of way, a strip of land lying within the right of way of the Chicago, Milwaukee & St. Paul Railway Company (hereinafter called the "Milwaukee Company"), in the city of Sioux Falls, S. D., and also for the condemnation of a right of way to cross the right of way and railroad of the Milwaukee Company. The amended petition was filed on the 15th day of September, 1904, and a summons was issued, which was served on the Milwaukee Company September 16, 1904, requiring it to appear in the proceeding within 20 days from the service of the summons, exclusive of the date of service. On the 5th of October the Milwaukee Company presented to the judge of the circuit court of Minnehaha county its petition for removal, accompanied by a bond, in due form. On the 6th day of October the petition was filed and an order made for the removal of the cause to the federal court, as provided by law. Simultaneously with the filing of the petition, bond, and order of removal the Milwaukee Company served its objections and answer upon the attorneys for the Central Company.

The petition for removal set forth the diversity of citizenship between the companies, alleging that the Central Company was a corporation and citizen of the state of South Dakota, and that the Milwaukee Company was a corporation and citizen of the state of Wisconsin; that the Milwaukee Company was the exclusive owner of the right of way sought to be condemned; that no other party to the action had any title or interest therein, or claim, or right to the damages or compensation that might be allowed, and that the amount in controversy exceeded the sum of $2,000, exclusive of interest and costs. The answer of the Milwaukee Company to that portion of the petition, filed by the Central Company, which sought to condemn that part of the land lying within the right of way of the Milwaukee Company, set forth and alleged its ownership of the right of way sought to be condemned, and that it had used and occupied it for railroad purposes for more than 20 years; that the Central Company had no right or authority, under the laws of South Dakota, to acquire this right of way by condemnation proceedings; and that the Milwaukee Company was entitled to the sole and exclusive possession thereof, for the operation of its railroad. For answer to that

portion of the amended petition, which sought to condemn the right to cross the right of way and railroad of the Milwaukee Company, it was alleged that the Central Company had made no effort to agree with the Milwaukee Company as to the amount of compensation to be made for the right to cross, or as to the point and manner of such crossing. Pursuant to the order of removal, a transcript of the proceedings was filed in the federal court. The Central Company thereafter filed a motion to remand, which was overruled, and on the 21st day of October, 1904, the case came on for trial before the court and a jury. At the close of the evidence offered by the Central Company, a motion was made by the Milwaukee Company to dismiss, upon the ground that no case had been made out for the condemnation of the property sought to be acquired. This motion was sustained by the court, and a judgment entered dismissing the proceedings upon the merits and for costs.

The first assignment of error challenges the correctness of the ruling of the circuit court denying the motion made by the plaintiff in error to remand the case to the state court. In determining this question, we must consider (1) whether the proceeding in the state court was a suit or controversy to which the judicial power of the United States extends; (2) if a suit or controversy, was it removable to the Circuit Court of the United States; (3) if removable, was it in law removed? We are of the opinion that the proceeding in the state court was a suit or controversy to which the judicial power of the United States extends, and that it was removable to the federal court. "It related to property rights, the parties are corporate citizens of different states, and the value of the matter in dispute exceeds the amount required to give jurisdiction to the circuit court." It falls, therefore, clearly within the provisions, both of the constitution and the judiciary act of 1887-88. Judiciary Act March 3, 1877, c. 373, § 1, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508] declares:

"That the Circuit Court of the United States shall have original cognizance concurrent with the courts of the several states, of all suits of a civil nature at common law, or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states."

Chief Justice Marshall, in Weston v. City of Charleston, 2 Pet. 464, 7 L. Ed. 481, in considering what constituted a suit, said:

"The term 'suit' is certainly a very comprehensive one and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords. Modes of proceeding may be various; but, if a right is litigated in a court of justice, the proceeding by which a decision of the court is sought is a suit."

The statutes of South Dakota provide that where a corporation, invested with the power of taking private property for public use, desires to do so, it shall file a petition in the circuit court of the county in which the property is situated, and that the party filing the petition shall be named therein as the plaintiff and all persons affected by the proceeding shall be named as defendants, and the petition must contain a description of the property to be taken. It

is further provided that a summons may issue which shall be entitled in the action or proceeding and which shall state the time and place of filing the petition, the nature of the proceeding, and contain a notice to the effect that if the defendants do not appear in said proceeding within 20 days from the service of the notice, exclusive of the day of service, the plaintiff will apply to the court to impanel a jury and ascertain the compensation. Provision is also made for the publication of the summons on defendants who are nonresidents as in other actions. It is further provided that upon affidavit of the default of the defendants the plaintiff may apply to the court to draw and summon jurors, and that the proceedings of impaneling the jury and rendering a verdict may be had during a regular term of the court, or in case of default that a special term of court shall be held at which the proceedings in impaneling a jury, trial, and rendering the verdict shall be conducted in the same manner as trials of actions in the circuit court, giving to defendants the right to challenge jurors and the right to examine and cross-examine witnesses. It is further provided that the jury shall ascertain and return in their verdict the compensation to be paid for each lot or parcel of land or property taken or damaged. It is also provided that the only issue or question to be tried by the jury shall be the amount of compensation for the property taken or damaged, and that upon the return of the verdict the same shall be recorded and a judgment entered thereon. Provision is also made for appeal the same as in other actions.

Proceedings under these statutes are, we think, civil suits within the meaning of the act of 1887, and where the necessary diverse citizenship exists and the amount in controversy is sufficient are removable under the provisions of that act. But it is insisted that the proceeding is an exercise, by the state, of its sovereign right of eminent domain, and can only be maintained as authorized by the laws of the state, and could not, in the first instance, be brought in the federal court. This position, in our judgment, cannot be sustained; for, notwithstanding the right is one that appertains to sovereignty, yet, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance, and, if that inquiry take the form of a proceeding before the courts between the parties, there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the state. In Colorado Midland Ry. Co. v. Jones (C. C.) 29 Fed. 193, Mr. Justice Brewer said:

"I do not suppose that a state can, by making special provisions for the trial of any particular controversy, prevent the exercise of the right of removal. If there was no statutory limitation, the Legislature could provide for the trial of many cases by less than a common-law jury, or in some other special way. But the fact that it had made such different and special provisions would not make the proceeding any the less a trial, or such a suit as, if between citizens of two states, could not be removed to the federal courts. If this were possible, then the only thing the Legislature of a state would have to do to destroy the right of removal entirely would be to simply change and modify the details of procedure."

Union Terminal Railway Co. v. Chicago, B. & Q. Co. (C. C.) 119 Fed. 209; Madisonville Traction Company v. St. Bernard Mining Company, 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, and cases there cited.

It is also insisted that the controversy was not separable as to the Milwaukee Company, and for that reason jurisdiction of the federal court does not attach. The Milwaukee Company was the exclusive owner of the strip of land lying within its right of way which was sought to be condemned, and alone entitled to the entire compensation for the taking, if it could be taken at all. We think it requires no discussion to show that there was clearly a separable controversy as between the Central Company and the Milwaukee Company which was properly removable to the federal court, notwithstanding the presence of other defendants owning an interest in other property sought to be acquired. Pacific Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; Chicago v. Hutchinson (C. C.) 15 Fed. 129; Railroad Co. v. McKell (C. C.) 75 Fed. 34.

With reference to the question sought to be raised, that it was not made to appear that the amount in dispute was sufficient to give the federal court jurisdiction, it is only necessary to say that the petition for removal expressly stated that the amount in dispute in said controversy exceeds in value the sum of $2,000, exclusive of interest and costs. This allegation is sufficient, although there may be no proof given upon the trial to sustain it. Stockyards v. Railroad Co., 67 Fed. 35, 14 C. C. A. 290; Pine v. N. Y. (C. C.) 103 Fed. 337; Lord v. DeWitt (C. C.) 116 Fed. 713; King v. Railway Co. (C. C.) 119 Fed. 1016.

Neither is there any merit, we think, in the suggestion that the removal was not taken in time. The summons which was issued and served on the 16th day of September contained a notice to the effect that if the defendant did not appear in the suit within 20 days from the service thereof, exclusive of the date of service, plaintiff would apply to the court to impanel a jury to assess the compensation. The 20 day period expired on the 6th of October, and included the whole of that day. The petition for removal having been filed and the order made within the 20 days, it was in time. Groton Bridge & Man. Co. v. American Bridge Co. (C. C.) 137 Fed. 284; A. K. & N. Ry. Co. v. So. Ry. Co., 131 Fed. 657, 66 C. C. A. 601. The answer of the Milwaukee Company denies the right of the Central Company to have the land condemned to its use on the ground that the Milwaukee Company is the owner of the right of way sought to be acquired, and is entitled to the sole and exclusive possession thereof for the operation of its railroad. The record shows that the located center line of the Central Company lies wholly upon the right of way of the Milwaukee Company, from the place of the proposed crossing, southerly for a distance of a half mile and 700 feet. This located line is from 16 to 22 feet distant from the center line of the Milwaukee road, and the Central Company proposed to take 33 feet on the east side of this located line and on the west side; the strip lying between the located line and the Milwaukee track as now used. For a portion of

this distance the Milwaukee road is constructed through a cut, which at places is 24 feet deep, and because of the usual slope of the banks of the cut the entire width of the right of way, 100 feet, is occupied by the cut. The distance between the two center lines is 13 feet and the width of the Milwaukee roadbed is 16 feet, so that the 33 feet which the Central Company sought to take lies wholly within the 100 feet of right of way of the Milwaukee Company, and, if appropriated, will exclude that company therefrom and prevent it from constructing any additional tracks on the east side of its present track.

Reference is made to sections 4 and 16, art. 17, and section 13, art. 6, of the Constitution of South Dakota, which reads as follows:

Section 4, art. 17: "The exercise of the right of eminent domain shall never be abridged or so construed as to prevent the Legislature from taking the property and franchises of incorporated companies and subjecting them to public use, the same as the property of individuals. * * *"

Section 16, art. 17: "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad, and shall receive and transport each the other's passengers, tonnage and cars. * * *"

Section 13, art. 6: "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained and before possession is taken. * * *"

The laws of South Dakota, conferring the power of eminent domain upon a railway company, are found in subdivision 6 and 7 of section 488 and in section 505 of the Civil Code, and read as follows:

"(6) To cross, intersect, join and unite its railroad with any railroad heretofore or hereafter constructed, at any point on its route and upon the grounds of such railroad corporation, with the necessary turnouts, sidings and switches, and other conveniences in furtherance of the objects of its connections. And every corporation whose railroad is or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in the manner provided by law for the ascertainment and determination of damages for the taking of real property."

"(7) To have and to use equal room, ground, rights, privileges and conveniences for tracks, switches, sidings and turnouts upon any levee, river bank or front, steamboat or other public landing, and upon any street, block, alley, square or public ground within any incorporated town or city, any charter or ordinance of any such city or town to the contrary notwithstanding; and to accomplish this, may adjust, with other corporations, the ground to be occupied by each with such tracks, switches, sidings and turnouts; and if such corporations cannot agree upon such adjustment, and the amount of compensation to be paid for the purchase or necessary change of location and removal of any track previously laid, the same shall be ascertained and determined, and the common, mutual and separate rights adjusted in the manner provided by law for the ascertainment and determination of damages for the taking of real property."

"Sec. 505. Every railroad corporation incorporated under this act, and any railroad corporation authorized to construct, operate or maintain a railroad within this state, has power and is authorized to enter upon any land for the purpose of examining and surveying its railroad, and to take, hold and appropriate so much real estate as may be necessary for the location, construction and convenient use of its road, including all necessary grounds for buildings, stations, work shops, depots, machine shops, switches, side tracks, turn tables, snow defenses and water stations; all materials for the construction of such road and its appurtenances, and the right of way over adjacent land

sufficient to enable such corporation to construct and repair its road and the right to conduct water to its water stations, and to construct and maintain proper drains, and may obtain the right to such real estate by purchase or condemnation in the manner provided by law."

Whether the provisions of the Constitution, above referred to, can be given a construction sufficiently broad to authorize the Legislature to provide for the taking of the right of way of one railroad by another railroad company, it is unnecessary to decide. It is sufficient, for the purposes of this case, to say that in our judgment the provisions of the Constitution are not self-executing, and that the statute above cited does not authorize it. The statute does authorize one railroad company to cross, intersect, join, and unite its railroad with any railroad heretofore, or hereafter constructed, at any point on its route and upon the grounds of such railroad corporation, with necessary turnouts, sidings, switches, and other conveniences, in furtherance of the objects of its connections, but does not authorize one railroad to build its road longitudinally along the right of way of another railroad company, and in the absence of express authority or clear necessity this cannot be done. The rule is stated by Circuit Judge Dallas, of the Third Circuit, in the case of Western Union Telegraph Company v. Penn. Co., 59 C. C. A. 117, 120 Fed. 362, in the following words:

"It is well settled that the right of eminent domain may be exercised by a corporation in any case, only when granted in express terms or by necessary implication and that property held and applied by one corporation for a public use, cannot be appropriated by another for its use without authority clearly expressed or which may be implied from the fact that the use claimed is absolutely necessary to the accomplishment of the purpose for which the claimant corporation was created." Penn. Railroad Companies' Appeal, 93 Pa. 150; Glover v. Boston, 14 Gray (Mass.) 292; Groff's Appeal, 128 Pa. 621, 18 Atl. 431; Cinn. S. & C. R. Co. v. Village Belle Center (Ohio) 27 N. E. 464; Lake Erie & W. Rd. Co. v. Board of Co. Com'rs (C. C.) 57 Fed. 945.

Although corporations engaged in business of a nature which requires them to serve the public are said to be public corporations, they are, in fact, but private enterprises inaugurated for the benefit of their stockholders. While railroads are subject to use for the public benefit, they are owned, not by the public, but by corporations, which so far at least as ownership is concerned are private corporations. And if one such corporation may take the property of another, so as to deprive the latter of the use to which it was devoted, except in cases expressly authorized by the statute, or where public necessity demands such taking, there would be no reasonable limit to the conditions under which the power of eminent domain might be exercised. The full extent to which any of the courts have gone upon this subject is that the land appropriated to a particular public use is not, under all circumstances, withdrawn from liability to be taken by legislative authority in the exercise of the power of eminent domain for another public use, with this qualification, that a special grant cannot be construed to authorize subversion of the former use, unless such appears, by express words or by necessary implication, to be the legislative intent. As there is no statute in the state of South Dakota which authorizes the taking by one railroad

of the right of way of another longitudinally, but the power granted is limited to the crossing or intersection of the right of way of another company and the uniting with its railroad, the attempted condemnation proceeding of a portion of the right of way of the Milwaukee Company longitudinally cannot be sustained.

One further question may be briefly noticed. Section 488, subd. 6, of the Civil Code, confers upon a railroad the right to cross another railroad at any point on its route and grounds, and provides that when the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such crossings or connections, the same shall be ascertained and determined in the manner provided by law, for the ascertainment and determination of damages for the taking of real property. The amended petition for condemnation did not allege, nor did the evidence show, that the Central Company had ever applied to the Milwaukee Company for the right to cross its road, or that the two companies had been unable to agree upon the compensation or upon the point and manner of crossing. This, we think, is a condition precedent to its right to condemn the crossing, and that the ruling of the circuit court was right.

The judgment of the Circuit Court is affirmed.