KANSAS CITY v. HENNEGAN et al.

(Circuit Court, W. D. Missouri, W. D.   March 11, 1907.)

No. 3,145.

1. REMOVAL OF CAUSES—CONDEMNATION PROCEEDINGS.

A proceeding by a municipality to condemn private property to its public use partakes of the character of a suit at law so far as to render it removable from the state to the proper federal court, where the conditions exist authorizing a removal as prescribed by the removal acts.

[Ed. Note.—Proceedings under power of eminent domain as civil suits under laws relating to removal of causes to federal courts, see note to South Dakota & C. Ry. Co. v. Chicago, M. & St. P. Ry. Co., 73 C. C. A. 183.]

2. SAME—SEPARABLE CONTROVERSY.

Since a proceeding to condemn land by Kansas City under its city charter as construed by the Supreme Court of the state presents a case of an indivisible unit, to be tried to one and the same jury, unless a jury trial is waived, and the whole finding as against all the defendants must be embraced in one judgment, so that if reversed on appeal the entire case must be tried de novo, such a proceeding as against both residents and nonresidents did not present a separable controversy as between the city

and the nonresidents whose property was sought to be condemned, and was therefore not removable to the federal courts.

[Ed. Note.—See separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

Condemnation.

E. C. Meservey and W. A. Knotts, for plaintiff.
A. S. Van Valkenburgh and Ritchie & Meyer, for defendants.

PHILIPS, District Judge. Kansas City desiring to extend what is known as its general "Market Square" for the purposes of a public market, its board of aldermen, by ordinance, approved by the mayor, in conformity with the provisions of its charter, designated a large quantity of land to be condemned for such use. This area embraces perhaps a block or more of ground, laid off into lots, with buildings thereon, owned in severalty by a large number of persons. The ordinance also, as in such case provided in the charter, designated what is known as a "benefit district," to be assessed, in connection with the city itself, to raise the necessary means for paying for the private property to be taken and appropriated for such use. This benefit district embraces, say, 8 or 10 blocks of ground. The property within this large benefit district, as is usual, is owned separately by a vast number of persons. After the preliminary inquest before the mayor, as provided under the charter, an appeal was taken from the findings of the jury to the circuit court of Jackson county. A given portion of the real estate to be taken and appropriated by the city belonged to Richard H. Hennegan and Richard B. Hall—said Hennegan owning a life estate therein, and the said Hall the estate in remainder. Hennegan and Hall being nonresident citizens of the state, in due time and form filed their petition in the state circuit court for removal of the case into this court, which was accordingly done. Kansas City has filed a motion to remand this cause, on the ground that the removing defendants did not have such a separable controversy as to entitle them to remove the whole cause into this jurisdiction. This motion has been heard and submitted.

The provisions of the charter of Kansas City in respect of condemnation proceedings are practically the same as stated in the Pacific Railroad Removal Cases, reported in 115 U. S. 3, 20, 21, 22, 5 Sup. Ct. 1113, 29 L. Ed. 319. That a proceeding instituted by a corporation or municipality to condemn private property to its public use so far partakes of the character of a suit at law as to render it removable from the state court into the proper federal court, where the conditions exist authorizing a removal as prescribed by the removal act of Congress, is no longer an open question in this jurisdiction. Union Terminal Railway Company v. C., B. & Q. R. Co. (C. C.) 119 Fed. 209; South Dakota Central Railway Company v. C., M. & St. P. Ry. Co., 141 Fed. 578, 73 C. C. A. 176; Traction Company v. Mining Company, 196 U. S. 240, 25 Sup. Ct. 251, 49 L. Ed. 462.

Most of the questions raised and discussed by counsel for Kansas City on the motion to remand were considered and ruled upon in the Pacific Railroad Removal Cases, 115 U. S., 5 Sup. Ct., 29 L. Ed.,

supra. That was a condemnation proceeding instituted by Kansas City under the same charter, in effect, as that here involved, to condemn to the city's use lands for the opening of Twelfth street in said city, extending through a large quantity of land belonging to separate owners. The decision, in that case answers the suggestion of counsel for the city that the cases where it has been ruled that the nonresident citizen seeking the removal of the cause from the state to the federal court present the instance where the petitioner for removal was the sole defendant, and that the right of such nonresident property owner to remove the cause should be limited accordingly. The record in said Pacific Railroad Removal Cases, on file in the office of the clerk of this court, which is before me, shows that it was a proceeding by the city to condemn property, to the use of said street, owned in severalty by a great number of individuals and corporations, under an ordinance establishing a large benefit district wherein a vast number of persons owned in severalty tracts of land to be assessed for benefits to pay the damages for property taken. The Union Pacific Railroad Company owned a certain tract of land, part of which was sought to be condemned and appropriated absolutely for this street, and a part was within the benefit district designated to be assessed by way of benefits. A large body of defendants were citizens of the state of Missouri; yet the Union Pacific Railroad Company, as a nonresident corporation, was held to be entitled to remove the proceeding, on the ground that the controversy was wholly separable as between it and the city.

The case of Hennegan and Hall, the removing defendants in the case at bar, is stronger in favor of their right. The Union Pacific Railroad Company, in the Removal Cases, was concerned not only as to that portion of its land sought to be appropriated by the city, but also as to the portion within the district to be assessed for benefits. In the latter respect it was more or less directly interested with all the other similarly situated codefendants in the benefit district, whereas the whole property involved of Hennegan and Hall is sought to be taken. This being so, according to the opinion of Mr. Justice Bradley in said Removal Cases, the matter in which they are concerned is as to the amount of damages to be found in their favor, representing the value of their property, which, being separable from the other issues in the case, was therefore removable under the judiciary act. The defendants here raise no question of jurisdiction as to the right of the city to condemn this property. Whether or not any other person's land is to be taken, and the value thereof, Mr. Justice Bradley said, did not concern the removing defendant, as by express provision of the charter "each piece of property taken is valued by itself, 'without reference to the proposed improvement,' and the amount of benefit to each piece of property benefited is ascertained separately without reference to the other pieces benefited." And therefore he held that "this controversy involving these issues is a distinct controversy between the company and the city. It may be settled in the same trial with the other appeals, and by a single jury; but the controversy is a distinct and separate one, and is capable of being tried distinctly and separately from the others."

The doubt cast upon the decisiveness of that ruling in this case arises on the following statement in the opinion of Mr. Justice Bradley:

"We have not been furnished by the counsel on either side with reference to any decisions of the Missouri courts giving construction to this section. Whether the direction that the cause shall be tried de novo requires that all the valuations and assessments are to be retried, or only those affecting the appellants, is not expressly stated."

That opinion was filed in May, 1885. At the October term, 1884, of the Supreme Court of Missouri, the case of State ex rel. Holden v. Gill, 84 Mo. 248, was heard. When the opinion was filed does not appear; but from the condition of the docket of that court, known to the writer of this opinion then connected with the court, and the date of the publication of volume 84 of the Reports, it is altogether probable that this opinion had not been announced when Mr. Justice Bradley prepared the opinion in the Pacific Railroad Removal Cases.

The construction of section 3 of said charter was directly involved in the case before the Supreme Court of Missouri. The substantive effect of that construction was that the condemnation proceeding against the various defendants presented the case of an indivisible unit, to be tried to one and the same jury, unless trial by jury be waived, and the jury must pass upon and make awards as to the amount of damages for each and every separate piece of land taken or damaged, and determine the benefits to be assessed against each piece of property within the benefit district. The whole finding must be embraced in one judgment. So much so is the judgment a unit, it was held not only that in the event of an appeal by a single defendant from the award in the mayor's court the whole case, including each separate piece of property involved, must be gone over and tried de novo, but also that if any error be committed in the progress of the trial in the circuit court prejudicial to the interests of any one of the various defendants suing out a writ of error, for which the judgment should be reversed, the reversal operates as a vacation of the entire judgment, necessitating, on remand, a trial de novo of the whole case from beginning to end, both as to the reascertainment of the amount of damages sustained by each owner whose property is taken or damaged, and the reascertainment and readjustment of the benefits to be assessed against each tract or parcel of land within the benefit district.

The writ of error in that case was sued out by only a small per cent. of the defendants, who were interested only in the amount of benefits assessed against their property. The only error committed by the trial court was in an instruction given to the jury, authorizing them to predicate their judgment alone upon their personal view of the property, regardless of the other evidence in the case touching the same; under which instruction the finding of the jury, both as to the value of the property taken and the amount of benefits assessed, might have been erroneously influenced. It must be confessed that the broad terms of the opinion in that case could well operate as an oppressive injustice in the instance of a codefendant whose separate property is sought to be condemned. The only question involved between him, the city, and others is the value of his property sought to be taken or condemned; that is to be tried out as a single issue between them. His

lawyer tries his case cleanly and faultlessly; the court commits no . error in its rulings or instructions to the jury on the issues; he and the city acquiesce in the findings of the jury, neither asking for a review thereof; but as to some question or matter respecting the trial of another condemnee, or assessee for benefits, error is committed, and either the city or the party immediately concerned sues out a writ , of error. For that error the cause is reversed. Why should there be a trial de novo of the issue between the city and the owner whose property has been correctly valued in the first trial, in which issue no error was committed? He is not concerned in the valuation of any other defendant's property, or in the assessment to be made upon the property in the assessed district. The assessments upon the benefited district are only a means by which the city raises the necessary money to pay for the property taken. Until the property owner is paid the value of his property so found, the city under its charter cannot take possession of the property. All concerned have had their day in court on the trial of this cause. What becomes of the maxim that no person shall be twice vexed in a suit concerning the same cause? How inexpressibly hard and oppressive is it on him that he should be again burdened with the expenses of a rehearing by re-employing a lawyer, and attending perhaps with his witnesses through another tedious hearing, which, as the history of such inquest shows, may drag its weary length through weeks and months; and then again be exposed to a repetitious error of the court, to a reversal, and a trial de novo, ad infinitum! It would seem that, as to a defendant so situated, the court should give such a practical, sensible construction to the statute as to avoid such absurdity and gross injustice. The result of an error should never be visited upon the unoffending suitor.

The evident thought in the mind of Mr. Justice Bradley, in his opinion in the Removal Cases, was that, after the amount of damages found to be paid, the assessment pro rata against the benefited property would be a mere matter of "mathematical calculation." With this view in his mind, he suggested that, where the single issue of value of property was involved between the separate owner and the city, if the state court "had equity powers it might direct a separate issue for the trial of this controversy by itself. It might try the other appeals without a jury (the parties waiving a jury), and try this controversy by a jury." It must now be conceded that in such condemnation proceeding neither the state court nor this court can exercise equity powers, and so divide the method of assessment under this charter, for the palpable reason that it is a suit at law, triable as an entirety, to one and the same jury, or to the court if all the parties waive a jury. And each party to be assessed for benefits is interested and concerned in seeing that as little damages as possible are assessed for the property to be taken; for in the proportion of the diminution of the fund to be paid are the burdens of the subjects of assessment for benefits lessened.

The ruling in State ex rel. Holden v. Gill has not been overruled by the Supreme Court, as far as I am advised. The attention of the court has been directed by counsel for the removing defendants to the case of Kansas City v. Block, 175 Mo. 433, 443, 74 S. W. 993, 996, wherein

Judge Fox was discussing the question raised by those defendants, who alone had sued out a writ of error to have reviewed the judgment of the circuit court in the condemnation proceeding instituted by Kansas City. They raised the question that some of the parties named in the proceeding had not been duly notified, and had not appeared in the case below. It was of this contention that Judge Fox said:

"It is insisted that the judgment in this proceeding is erroneous because of the want of service of process upon some of the other parties in interest, and the insufficiency of the notice by publication. It is sufficient to say, as to this contention, that the parties who appellant claims are injured by this proceeding are not before the court. We will heed their grievances when our attention is directed to them in an appropriate proceeding for that purpose. This judgment is not an entirety; the interests of the parties are independent of each other; the property damaged or benefited is not located at the same place."

We may aptly apply to the foregoing language the sensible observation of Chief Justice Marshall, in his final summing up in the trial of Aaron Burr:

"Every opinion, to be correctly understood, ought to be considered with the view to the case in which it was delivered. * * * General expressions ought not to be considered as overruling settled principles, without a direct declaration to that effect."

As the parties not appealing in the case considered by Judge Fox were not complaining of the judgment against them for the lack of sufficient notice, the cause was not to be reversed by the appellants for any error which did not prejudice them. In that sense the interests of the parties concerned in the error being separate, Judge Fox said that the judgment was not an entirety. The ruling in the Holden-Gill Case was not involved, and evidently was not in the mind of the learned judge. Without any direct reference to the Holden-Gill Case, it would be strained for this court to infer that it was the mind of the Supreme Court to overturn the deliberate ruling in that case.

In the recent case of Cincinnati, N. O. & T. P. Ry. Co. v. Bohon, 200 U. S. 221, 26 Sup. Ct. 166, 50 L. Ed. 448, Mr. Justice Day, in discussing the question of the removability of a suit against a nonresident railroad company where it was joined with its servant as a codefendant, under a statute of Kentucky which authorized such joint action, said:

"A state has an unquestionable right by its Constitution and laws to regulate actions for negligence, and where it has provided that the plaintiff in such cases may proceed jointly or severally against those liable for the injury, and the plaintiff in due course of law and in good faith has filed a petition electing to sue for a joint recovery given by the laws of the state, we know of nothing in the federal removal statute which will convert such action into a separable controversy for the purpose of removal because of the presence of a nonresident defendant therein properly joined in the action under the Constitution and laws of the state wherein it is conducting its operations and is duly served with process."

In the case at bar, under the scheme of the charter of Kansas City, by legislative grant the state has seen fit, according to the ruling of the Supreme Court of the state, to require in condemnation proceedings by the city that it shall in one suit join all persons as defendants

whose property interests are to be affected thereby, whether as owners of parcels of land to be taken and appropriated to the use of the city, or as owners in the designated benefit district to be burdened with assessments to pay for the property so appropriated; that the whole case shall be tried to one jury, unless waived; and that there shall be but one judgment. The Supreme Court of the state has construed this charter to mean that although the estates and interests of the different defendants may be separate, yet the suit is an indivisible unit, with absolute interdependence between all the defendants, incapable of separation into parts so that one may be unaffected by the findings and judgment as it concerns another. The wisdom, justice, or sound policy of this legislation this court cannot revise or correct, as it is within the competency of the Legislature to direct how the sovereign power of eminent domain shall be exercised by the city, and the manner of procedure therein. If the method adopted be harsh and oppressive in the particular noted in this opinion, it is for the Legislature to correct the abuse, or for the Supreme Court of the state to so tone down, by reasonable construction in a revised opinion when confronted with such question, the apparent ruling in the Holden-Gill Case, as not to produce the absurd and harsh result indicated.

Since the decision of the Supreme Court was published in the Holden-Gill Case there has been no attempted removal of such condemnation proceedings instituted under the charter of Kansas City by a single non-resident defendant, to my knowledge, save that of Kansas City v. C., M. & St. P. Ry. Co. et al., for the extension of Wyandotte street, in 1894. There was a motion by the city to remand the cause. The record entry in that case is as follows:

"Motion to Remand. This cause having been heretofore submitted to the court, and now the court being fully advised in the premises, doth order that the same be sustained, and that this cause be remanded to the circuit court of Jackson county."

No opinion was filed by the court, and I am unable to recall whether or not it was a consent order or an expression of the opinion then entertained by the presiding judge.

Yielding to what I conceive to be the effect of the construction placed on this charter by the state court, the motion to remand must be sustained.