CHICAGO, M. & ST. P. RY. CO. v. DRAINAGE DIST. NO. 8 OF SHELBY COUNTY, IOWA, et al.

(District Court, S. D. Iowa, W. D. August 31, 1916. Supplemental Opinion, March 6, 1917.)

No. 4013.

1. CONSTITUTIONAL LAW ⬤⟲284(2)—"DUE PROCESS OF LAW"—TAXATION.
    Taxation, general or special, is a legislative function, and it is not necessary to "due process of law" that the matter of assessment and levy shall ever come before a court, but it is sufficient that at some stage in the proceedings the parties affected shall have an opportunity to be heard.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

2. REMOVAL OF CAUSES ⬤⟲23—SUPPLEMENTAL OPINION—RIGHT OF REMOVAL —"SUIT"—TRANSPOSITION OF PARTIES.
    Under a state statute establishing drainage districts, authorizing them to construct drains and assess the cost on property benefited, and giving the property owner a right of appeal from the assessment to the district court, such an appeal is a "suit," in which the appellant is defendant, within the meaning of the Removal Act (Comp. St. 1916, § 1010).

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit.]

3. REMOVAL OF CAUSES ⬤⟲3—RIGHT OF REMOVAL—DESIGNATION OF PARTIES IN STATE COURT.
    A state statute cannot deprive a party of the right of removal by designating him as plaintiff in a particular class of suits where he is essentially defendant.

In Equity. Suit by the Chicago, Milwaukee & St. Paul Railway Company against Drainage District No. 8 of Shelby County, Iowa, the Board of Supervisors of Shelby County, and Hans Broderson, George E. Miller, and N. H. Johnson, members of said Board, acting as and for Drainage District No. 8. On motion to remand to state court. Denied.

J. N. Hughes, of Cedar Rapids, Iowa, for plaintiff.

Cullison & Cullison and E. S. White, all of Harlan, Iowa, for defendants.

WADE, District Judge. This case was transferred to this court from the district court of Iowa in and for Shelby county, upon petition of the plaintiff. It has been submitted upon motion to remand. I

can repeat with emphasis the language of Judge Van Valkenburgh in Drainage District No. 19 v. C., M. & St. Paul Ry. Co. (D. C.) 198 Fed. 253, in which he says:

"As stated at the outset, this question is attended by difficulties. It is a perplexing one, and we must concede that it is not entirely free from doubt, feeling, as we must, that it is highly desirable that matters of this nature should, so far as possible, be dealt with in the courts of the state especially designated and more conveniently adapted to handle such proceedings."

Many cases involving questions related to the questions at issue in this case have been decided by the federal courts and the Supreme Court of the United States, and yet the very question involved in this case has never been before any court so far as I have ascertained.

The question before Judge Van Valkenburgh in the Drainage District Case, supra, comes nearer to this case than any other I have found, and yet there is a marked distinction, which distinction I feel is decisive in this case. In the Drainage District Case, it is said:

"In its petition for removal the defendant alleges that benefits amounting to $617.50 have been illegally, wrongfully, and improperly assessed against it, and that the drainage district proposes to construct a ditch along and across the right of way and roadbed of petitioner, to its damage in the sum of $17,490."

In his opinion in this case Judge Van Valkenburgh quotes from In re Jarnecke Ditch (C. C.) 69 Fed. 161, as follows:

"Whether a removal could be had, if the sole issue presented by the remonstrants was the amount of the assessments, it is not necessary to determine."

In the case at bar the only question involved is the assessment for alleged benefits. Neither before the board of supervisors, nor in this court, is there any question raised as to the jurisdiction of the board, or the regularity of the proceedings up to the time of the appraisement and assessment. In this proceeding there can be no question tried or determined as to the establishment of the drainage district, or the necessity therefor; it is simply and solely a question of the amount of taxes for special benefits which the plaintiff is required by the assessing body to contribute to the public improvement, and it is a question as to what tribunal shall determine such amount under the peculiar provisions of the statutes of the state of Iowa. Did this question involve any question of damages to the property, or any question of eminent domain, I would have no hesitation in holding that this court had jurisdiction.

Another case which considers the questions involved, is County of Upshur v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196, where the defendants complained of taxes levied upon their land, and filed a petition with the county court, asking that the same be reduced, and thereupon filed a petition to remove the case to the United States court, which was sustained by the Circuit Court, which ruling was reversed by the Supreme Court of the United States. It is true that the Supreme Court says in that case:

"Even an appeal from an assessment, if referred to a court and jury, or merely to a court, to be proceeded in according to judicial methods, may become a suit, within the act of Congress."

And yet I am not convinced that this proceeding comes within this language of the court. Kansas City v. Hennegan (C. C.) 152 Fed. 249, referred to by counsel, involved the question of condemnation of property for public purposes, and not the question of taxation.

[1] Taxation, whether general or special, is a legislative function, and the power of the county in this case to levy taxes upon the plaintiff's property was derived from the Legislature. It is well settled that the Legislature may prescribe the mode by which taxes shall be levied and the amount determined. It may fix the tribunal, or designate the body of men who shall act in making appraisement and assessment. It is not necessary to "due process of law" that the matter shall ever come before a court. All that is necessary is that at some stage in the proceedings the parties affected shall have an opportunity to be heard. In the recent case of St. Louis & Kansas City Land Co. et al. v. Kansas City, 241 U. S. 419, 36 Sup. Ct. 647, 60 L. Ed. 1072, the Supreme Court of the United States says:

"Where assessments are made by a political subdivision, a taxing board, or court, according to special benefits, the property owner is entitled to be heard as to the amount of his assessment and upon all questions properly entering into that determination. 'If the Legislature,' as has frequently been stated, 'provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law.' Spencer v. Merchant, 125 U. S. 345, 355, 356 [8 Sup. Ct. 921, 31 L. Ed. 763]; Paulson v. Portland, 149 U. S. 30, 41 [13 Sup. Ct. 750, 37 L. Ed. 637]; Bauman v. Ross, 167 U. S. 548, 590 [17 Sup. Ct. 966, 42 L. Ed. 270]; Goodrich v. Detroit [184 U. S. 432, 22 Sup. Ct. 397, 46 L. Ed. 627], supra. What is meant by his 'proportion of the tax' is the amount which he should be required to pay, or with which his land should be charged. As was said in Fallbrook Irrigation District v. Bradley, 164 U. S. 175 [17 Sup. Ct. 56, 41 L. Ed. 369], when it is found that the land of an owner has been duly included within a benefit district, 'the right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax; i. e., the amount of the tax which he is to pay.' See, also, French v. Barber Asphalt Paving Co., 181 U. S. 324, 341 [21 Sup. Ct. 625, 45 L. Ed. 879]. It is a very different thing to say that an owner may demand as a constitutional privilege, not simply an inquiry as to the amount of the assessment with which his own property should rightly be charged in the light of all relevant facts, but that he should not be assessed at all, unless the assessments of other owners, who have paid without question and are not complaining, shall be reopened and redetermined. The Fourteenth Amendment affords no basis for a demand of that sort."

In Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, it is said:

"Undoubtedly, where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But, where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. As stated by Mr. Justice Bradley, in his concurring opinion in Davidson v. New Orleans [96 U. S. 97, 24 L. Ed. 616]: 'In judging what is "due process of law," respect must be had to the cause and object of the taking, whether under the taxing

power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law," but if found to be arbitrary, oppressive, and unjust, it may be declared to be not "due process of law." ' "

The court also says:

"But where a tax is levied on property, not specifically, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, a different principle comes in. The officers, in estimating the value, act judicially; and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law, to hear complaints respecting the justice of the assessments. The law, in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law. In some states, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts and be there corrected, if erroneous, or set aside, if invalid, or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the taxpayer to be heard respecting the assessment, which can be deemed essential to render the proceedings due process of law."

In Kelly v. Pittsburgh, 104 U. S. 78, 26 L. Ed. 658, it is said:

"Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings in a court of justice. The necessities of government, the nature of the duty to be performed, and the customary usages of the people have established a different procedure, which, in regard to that matter, is and always has been due process of law."

Now, with these established legal principles before it, the Legislature of Iowa devised a plan for establishing drainage districts, and collecting taxes to pay for their construction. It provided for the establishment of the district, as a separate proceeding, to be first completed; then it provided for the appraisement and the assessment; then it provided for a hearing by any one dissatisfied with the assessment. It could have provided for this hearing before the board of supervisors, and, with proper notice and opportunity for hearing, it could have been made final, and would be due process of law; but the Legislature selected another tribunal, the district court of the state of Iowa, and it conferred certain powers upon the district court which it did not previously possess. It made of the district court an assessing tribunal, to the extent, at least, that the court would have to hear testimony and consider the benefits to all the land in the district, in order to determine whether or not one tract of land was assessed more than its share of the benefits.

This is a proceeding unknown to either the common law or to the courts of chancery. The Legislature directed that it should be tried by the court as "an action in equity"; but the Legislature of Iowa has no power to prescribe forms of action for the courts of the United States. In the recent case of McLaughlin v. St. Louis Southwestern Railway Co., 232 Fed. 579, 146 C. C. A. 537, it is said:

"Counsel then argue that the provision of the Constitution and laws of Arkansas, above cited, can be invoked for the purpose of conferring jurisdic-

tion in equity upon the United States District Court, sitting in Arkansas, to entertain the present action. The result of such a contention, if it may be maintained, is to hold that the people of Arkansas, in framing a Constitution, and the General Assembly thereof, in the enactment of laws, may enlarge or limit the jurisdiction of the federal court sitting in equity."

It is further said:

"The Code of Iowa enacts that 'an action to determine and quiet the title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto, though not in possession,' * * * implying that the action may be brought against one in possession of the property. And such has been the construction of the provision by the courts of that state. Lewis v. Soule, 52 Iowa, 11 [2 N. W. 400]; Lees v. Wetmore, 58 Iowa, 170 [12 N. W. 238]. If that be its meaning, an action like the present can be maintained in the courts of that state, where equitable and legal remedies are enforced by the same system of procedure and by the same tribunals. It thus enlarges the powers of a court of equity, as exercised in the state courts; but the law of that state cannot control the proceedings in the federal courts, so as to do away with the force of the law of Congress declaring that 'suits in equity shall not be sustained in either of the courts of the United States, in any case where a plain, adequate and complete remedy may be had at law,' or the constitutional right of parties in actions at law to a trial by a jury. The state, it is true, may create new rights and prescribe the remedies for enforcing them, and, if those remedies are substantially consistent with the ordinary modes of proceeding in equity, there is no reason why they should not be enforced in the courts of the United States, and such we understand to be the effect of the decision in Clark v. Smith, 13 Pet. 195 [10 L. Ed. 123], and In re Broderick's Will, 21 Wall. 503 [22 L. Ed. 599]."

The court further states:

"We have thus far assumed that the Constitution and laws of Arkansas, as above cited, conferred jurisdiction upon the state courts of Arkansas to enjoin the collection of taxes in cases like the one at bar; that is, where the gist of the action is an assault upon an erroneous assessment of property for taxation. We refuse to assent to the proposition that, if they do, they can be made available for the purpose of conferring jurisdiction upon the United States District Court for Arkansas in a case like the present one."

The language above quoted, "The state, it is true, may create new rights and prescribe the remedies for enforcing them, and, if those remedies are substantially consistent with the ordinary modes of proceeding in equity, there is no reason why they should not be enforced in the courts of the United States," is significant; but the remedy provided for by this appeal is not "substantially consistent with the ordinary modes of proceeding in equity." It is a proceeding never heard of in a court of equity, and in which a court of equity would have no jurisdiction, except as conferred by the statutes of the state of Iowa. It seems to be clear that the Legislature simply designated the district court as a medium of final determination of the amount of taxes to be assessed, and that as to any property located in the state the procedure fixed by the statute must be followed.

It is needless to review the numerous cases defining what constitutes a "suit," within the meaning of the Removal Act (Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [Comp. Stat. 1916, § 1010]). Some of the definitions would clearly include this proceeding, but they must be considered with reference to the particular controversy before the

court. It must be conceded, I think, that, if this proceeding is subject to removal, every proceeding involving the taxation of property, either general or special, is also removable. I see no difference, in the principles involved, between the drainage legislation and the legislation permitting special assessments for sewers and paving, and I cannot bring myself to believe that this court has jurisdiction of all these proceedings. The Supreme Court of the United States in the Hagar Case, quoted above, says:

"The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments."

And I feel that, where the Legislature has provided that property owners may have a right to appeal to the district court of the state, public policy requires that the trial should be had in the local tribunal, convenient to the field of inquiry.

Much is said in some of the cases about the necessity of a broad construction of the statute, to enable nonresidents to avoid the effect of local prejudice; but I cannot assume that there is any more danger of local prejudice in taxation of this kind than there is in the assessment of general taxes for state, county, and city purposes, to which nonresidents must assent, without opportunity for hearing in the courts of the United States.

While I am not without doubt in this ruling, the doubt is not sufficiently strong to justify me in retaining jurisdiction of this case, and the motion to remand will be sustained.

### Supplemental Opinion.

Since filing the original opinion herein, I have had before me, and have decided, the case of In the Matter of the Appeal of the Assessment of the Mississippi River Power Company, 241 Fed. 194, in the Eastern division of this district. This case involved all the questions involved in the case at bar, except the single question as to whether the Chicago, Milwaukee & St. Paul Railway Company, being designated by the Iowa statute as the "plaintiff," can for the purpose of this motion to remand be considered a "defendant." It is true that the statutes involved in the two cases differ, but in essentials, in the controversies before the court, they are the same, and my opinion in the foregoing case, in conflict with my opinion previously filed in this case, is conclusive herein.

[2] Now, upon further consideration and deeper study of the remaining question, as to whether the railway company can be considered as defendant in this proceeding within the meaning of the Removal Act, I am convinced that it can and must be so considered. This conclusion has been forced upon me, not by any specific words of the statutes involved, but rather by the reason and spirit of the law as construed by the highest courts. The Removal Act is founded in a purpose and is based upon the recognition of a right. The spirit of all our legislation providing for trials in court is that the parties shall be entitled to a trial in their own community, or as nearly in their own community as is practicable. Human experience, and a knowl-

edge of human nature, compels us to give recognition to the fact that, under certain circumstances and conditions, there are cases—sometimes, on account of the parties; at other times, on account of the questions involved—in which a resident party, with a case tried in his own community, has some advantage over the nonresident or the party who is a stranger in the community.

This statement in no manner reflects upon courts or juries; it simply gives recognition to the fact that tribunals, whether courts or juries, are merely human, and that sometimes—rarely, it is true, but sometimes—human judgment and will are unconsciously influenced. But I think a stronger reason for granting the right of removal exists in the supreme importance of not only giving a man a fair trial in a tribunal unbiased and unaffected by local interest, prejudice, or parties, but in having every man feel that he has had a fair trial before a tribunal unbiased and unaffected by anything except the merits of the case. Therefore it was that Congress, in its effort to provide fair and just tribunals, and in its effort to maintain confidence in such tribunals, and in the results of trials, provided that, in cases involving substantial amounts, a citizen of one state should, when his rights were brought before the court in another state, have the privilege of transferring the subject-matter of litigation into the courts of the United States for trial.

The law covers all "suits," and this is a "suit," as heretofore determined by me in the case above referred to. In the opinion in that case I have held that the Legislature of Iowa, in its generous treatment of persons whose property may be assessed for any purpose, provided that such person should, before the question as to whether his property was assessable at all, and, if so, for what amount, have the right to a trial in a judicial tribunal, which trial is a "suit."

[3] In the authorities quoted it will be found that the Supreme Court of the United States has specifically held that, once this right is given, the Legislature cannot by any process or procedure, or by any designation of parties or proceedings, affect the "right" conferred by Congress (not by the Legislature) to have the cause removed to the proper court for trial. The Legislature had the power to confer the "right" to a trial, and, having conferred that right, it had no power to limit any citizen upon whom the right was conferred to any specific tribunal to try out the issues. It could not do it directly; it could not do it indirectly. It could not bar the right of removal by saying that the railway company in this case should be called the plaintiff, nor could it confer the right to removal by saying that it should be designated as "defendant."

Now, stripped of forms and methods of procedure, the railway company in this case is the owner of property subject to taxation. The question as to whether it is subject to taxation is, under the issues in this case, as I understand them, settled; but the question as to the amount of taxes the property should bear, is in issue—a question of law and fact. It does not make any difference where the burden of proof is; the thing that is transpiring in the court where the trial is held is an inquiry into the amount the railway company

must pay to the other party to the suit, or through the other party to the suit, for certain purposes; and ultimately, whichever form it may assume, the result of the judgment in this case is to fix a liability which the railway company must pay.

In Hudson River Railway v. Day (D. C.) 54 Fed. 545, the court says: "He may be plaintiff in appeal, but he is defendant in the cause." And the court points out that at the beginning the railroad company "was the actor," just as in this case the county in the beginning "was the actor." It is further pointed out that it (the railway company, there; the county here) "originated the initiatory steps which led to the award which is now on appeal from the judgment of a lower tribunal. It invoked the execution of the law, as against the land-owner, and it was, and is, in fact the plaintiff."

In Mason City & Ft. Dodge Railway v. Boynton, 204 U. S. 570, 27 Sup. Ct. 321, 51 L. Ed. 633, the Supreme Court of the United States says:

"And it is obvious that the word 'defendant,' as there used, is directed toward more important matters than the burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which, for the purpose of removal, this court might think the proper ones to be applied. In condemnation proceedings the words 'plaintiff' and 'defendant' can be used only in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors; one to acquire title, and the other to get as large pay as he can."

Here both parties are "actors"—the one party exercising its power and duty to make a public improvement, and to compel the other party to pay its share of the cost of such public improvement; the other party insisting that it shall pay only a portion charged against it.

I have looked carefully, and find that the courts have given little consideration to the question here involved. But it is my judgment that, when Congress limited the right of removal to the "defendant," it based such limitation upon the theory that a party, resident or non-resident, who voluntarily appeared in a state court when he had a choice of jurisdictions, should not be permitted to ask for a transfer of his case out of that court, and if the railway company in this case, being a nonresident, could have gone directly into the United States court, as it could in any ordinary action against a resident of Iowa, then, of course, it would be estopped from asking removal herein, because it had voluntarily chosen its forum; but the right conferred by the Legislature gave it no such power. It proceeded in the only way authorized by the Legislature. There was no "suit" possible until it had perfected its appeal, but instantly the appeal was perfected, there was a "suit," and in the spirit of the law, I believe that it ought to have, and I believe that it has, the right to remove the case for trial.

If the Legislature of Iowa had enacted that, after the determination by the board of supervisors of the amount of the tax, any property owner would have the right, by proceeding in a court of competent jurisdiction, to have the proceedings reviewed in an action in equity, the railway company certainly could have brought its proceeding in this court. The Legislature in effect did grant the property

owners this very thing—a trial de novo in an equity proceeding in a court of competent jurisdiction. It could not, by designating the procedure for getting into court an "appeal," destroy the right which Congress gave to the plaintiff, a nonresident of the state, to have its case tried in the United States court. In any event, under the authorities cited in my opinion in the Keokuk Case (D. C.) 241 Fed. 194, if there is any doubt, the motion to remand should be denied, because the other party has the right of appeal, and the railway company has not; and I am a firm believer in putting a case, if possible, in shape where the parties may have the final judgment of the higher courts.

Now, this overrules my previous opinion in this case. Order will be entered accordingly.